JUSTICE SOLOMON delivered the opinion of the Court.
**85 We are called upon to determine whether defendant Todd Dorn's right to a grand jury presentment under the New Jersey Constitution was violated when the trial court permitted the State, on the eve of trial, to increase the charge in count two of defendant's indictment from a third-degree to a second-degree drug offense. We are also asked whether it was proper for the trial court to admit into evidence a copy of a map showing that defendant's home was within 500 feet of public housing, a public park, or public building.
Defendant was indicted for various drug-related offenses, including two counts of second-degree possession of a controlled dangerous substance (CDS) with the intent to distribute within 500 feet of public housing, a public park, or public building. The first count related to defendant's possession of heroin, a second-degree offense, and the second count related to defendant's possession of seventy-five grams of marijuana, listed in the indictment as a third-degree charge. The day before the trial began, the trial **86 court, over defendant's objection, permitted the State to amend the second count in defendant's indictment from a third-degree to a second-degree charge, citing administrative error.
At trial, the State submitted-and the trial court admitted into evidence-a copy of a map showing that defendant's home was within 500 feet of public housing, a public park, or public building. Defendant objected to the admission of the map on the ground that it was a copy without a raised seal.
We conclude that the amendment to count two of defendant's indictment was a violation of defendant's right to grand jury presentment under the New Jersey Constitution, *941 and we remand the conviction on count two to the trial court. We also find that defendant waived his right to object to the map's authentication.
I.
The facts contained in the appellate record reveal that Atlantic City Police Sergeant Richard Andrews was patrolling the area of 615 Green Street, a public housing complex where defendant lived. Andrews saw a Jeep parked in front of the home and a person, later identified as Jamie Guth, walking toward the front door. As Andrews drove past the Jeep in his marked police car, the driver of the Jeep appeared nervous. The driver then drove around the block and eventually returned to the Green Street home where Guth re-entered the Jeep. The Jeep drove off, and Andrews radioed other officers in the area who pulled the Jeep over.
When Guth exited the Jeep, an officer saw a brick of heroin[1] protruding from Guth's bra. Officers arrested Guth and, in addition to the heroin, found green glassine baggies stamped with the word "Thriller." Officers later interviewed Guth who stated that she had purchased the heroin from a man she knew as "Ty." Guth identified a photograph of defendant as Ty, the man from whom she had purchased the heroin.
**87 Thereafter, police began surveillance of the Green Street home. During the surveillance, police saw defendant and a woman leave the home and drive away. They followed defendant and eventually executed a stop of defendant's vehicle and arrested defendant for drug distribution.
The arresting officers told defendant that the officers were in the process of applying for a search warrant for his home. According to the officer, defendant responded that "there was no need to do all that, that [defendant] just had a little in the house and he would take [him] to it." Defendant signed two consent-to-search forms, one permitting police to enter and search defendant's home and one permitting police to search defendant's vehicle. Police found nothing during the subsequent vehicle search, but they did find thirty-five glassine baggies in the house with "Thriller" stamped on them; the baggies contained "a white powdery substance believed to be heroin." Police also found 75.01 grams of marijuana[2] in defendant's home.
An Atlantic County Grand Jury indicted defendant for second-degree possession of heroin with the intent to distribute within 500 feet of public housing, a public park, or public building, contrary to N.J.S.A. 2C:35-7.1 (count one); third-degree possession of marijuana with the intent to distribute within 500 feet of public housing, a public park, or public building, contrary to N.J.S.A. 2C:35-7.1 (count two); third-degree distribution of CDS (heroin), contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count three); third-degree possession of heroin with the intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count four); third-degree possession of one or more ounces of marijuana with the intent to distribute, contrary to N.J.S.A. 2C:35-5(a)(1) and (b)(11) (count **88 five); and fourth-degree possession of more than fifty *942 grams of marijuana, contrary to N.J.S.A. 2C:35-10(a)(3) (count six).[3]
Defendant rejected the State's pretrial plea offer of a five-year term of imprisonment with a two-and-a-half year period of parole ineligibility and instead chose to proceed to trial. According to defendant, he rejected the State's plea offer because it was his understanding that his maximum sentencing exposure was twenty years' imprisonment with a ten-year period of parole ineligibility.
One day before trial, the State moved under Rule 3:7-4 to amend count two of the indictment from third-degree possession of marijuana with the intent to distribute within 500 feet of public housing, a public park, or public building, to a second-degree offense. The prosecutor claimed that:
if you take it in conjunction with the grand jury transcripts which I have where they talk about the quantity, and additionally count [five] of the indictment where it is clear the marijuana is over one ounce, the defendant is placed on notice, it is a second-degree offense. It is an error in form, not an error in substance.
Defense counsel argued that elevating the charge to a second-degree offense was a substantive alteration, not merely an alteration in form.
The trial court granted the State's motion and amended count two of the indictment from a third-degree offense to a second-degree offense. The court stated,
They are not amending the substance of the charge at all. There is and I am satisfied a typographical error in that it is a second-degree, and while it would have been preferable to include in the body of that count the amount of marijuana. From reading count [five], it's clear that the grand jury had information that they believed to be credible, so that they returned count [five] which specifically indicates the quantity of over one ounce.
During the presentation of the State's case, the prosecutor offered into evidence, through the testimony of an officer involved **89 in the investigation, a copy of a "zone map for drug[,] DUI[,] and weapon free zones and public housing." According to the officer's testimony, the map "designate[d] 500 square feet around a public park, a public housing facility, a public building," and "recreational sites." Defense counsel objected to the map's admission into evidence on the grounds that (1) the map was a copy and (2) the State should have provided a copy of the map with a raised seal. In response, the trial court stated, "I personally don't think it's necessary to bring in the city engineer. Having said that, since this is a copy, although I think copies are allowable, if you insist, I'm not going to object to that, I'll just say, okay, you got to do it." Defense counsel did not accept the trial court's offer to require the State to produce the city engineer and merely renewed his objection to the admission of the copy into evidence. The trial court found that the document was "self-authenticating" and admitted the map under N.J.R.E. 902.
At the close of the State's case-in-chief, defendant moved to dismiss counts one and two, charging defendant with possession of heroin and marijuana with the intent to distribute within 500 feet of public housing, a public park, or public building, *943 arguing that the map should not have been admitted because it did not bear a raised seal. The court denied the motion, and the jury convicted defendant on all six counts in the indictment, including the amended second-degree offense in count two.
The Appellate Division affirmed defendant's conviction, finding that count five of the indictment put defendant on notice that he stood accused of possessing more than one ounce of marijuana, a second-degree offense, notwithstanding the "administrative or clerical" error by which count two was designated as a third-degree charge. Thus, the Appellate Division found no error in permitting the amendment to count two. The panel also rejected defendant's claim that the map's admission into evidence violated his right to confrontation, noting that the issue was raised for the first time on appeal and that defendant failed to demonstrate that **90 the map's admission was "clearly capable of producing an unjust result."
The panel vacated defendant's sentence on count one and remanded the matter for resentencing and a determination as to whether the sentences under counts one and two should be concurrent or consecutive. On remand, the court sentenced defendant to ten years' imprisonment with a five-year term of parole ineligibility on count one and a concurrent ten-year term of imprisonment with a five-year ineligibility term for count two. The court declined to impose a discretionary extended-term sentence for count one.
This Court granted certification on two issues:
[ (]1) whether the trial court erred in admitting into evidence a map identifying areas within 500 feet of public parks and buildings; and [ (]2) whether defendant's right to a grand jury indictment was violated when the trial court permitted the prosecutor to amend the indictment and expose defendant to greater criminal liability.
[ 229 N.J. 622, 164 A.3d 412 (2017).]
II.
A.
As to the admission of the map, defendant asserts that this Court's decision in State v. Wilson, 227 N.J. 534, 152 A.3d 930 (2017), should apply here and that the State failed to provide any authenticating testimony or evidence beyond the certification of the map's engineer, which was insufficient.
Regarding the amendment of count two, defendant argues that the trial court bypassed the grand jury's function under the New Jersey Constitution when it permitted the State to amend the indictment to reflect a higher degree of crime without first consulting the grand jury. Defendant also contends that the trial court's decision in this case violates Rule 3:7-4, which permits courts to modify indictments to correct errors in form as long as the defendant has adequate notice of the allegations and defendant will not be prejudiced by the amendment. Defendant asserts that **91 he was entitled to know the full extent of his penal exposure when he decided to proceed to trial. Defendant therefore asks this Court to remand count two for new proceedings or for entry of an amended judgment of conviction for third-degree, rather than second-degree, possession with the intent to distribute.
B.
The State argues that Wilson is not applicable and that the State properly authenticated the map through an investigating officer's testimony under the pre- Wilson rule.
*944 The State also claims that the indictment, taken as a whole, put defendant on notice that the third-degree charge in count two was a typographical error. The State reminds the Court that count five charged defendant with having over two ounces of marijuana in his possession, and count one charged defendant with second-degree possession with the intent to distribute under the same statute for the heroin found in his home.
III.
We begin our discussion by dispensing with defendant's assertion, purportedly relying on Wilson, that the State failed to provide any authenticating testimony or evidence beyond the certification of the map's engineer, which was insufficient. In Wilson, the State produced testimony by a detective from the prosecutor's office who was unable to testify to the map's accuracy. Id. at 540, 152 A.3d 930. The defendant objected, arguing that the map was testimonial hearsay and that its admission violated his confrontation rights because the State did not produce a witness who had either prepared the map or could testify to its accuracy. Id. at 541-42, 152 A.3d 930. This Court held that such maps are not self-authenticating, id. at 553, 152 A.3d 930, and explained that "[p]roper authentication of the map require[s] a witness who [can] testify to its authenticity and be cross-examined on the methodology of the map's creation and its margin of error,"
ibr.US_Case_Law.Schema.Case_Body:v1" id="p92" href="#p92" data-label="92" data-citation-index="2" class="page-label">**92ibid. (citing State v. Simbara, 175 N.J. 37, 47-48, 811 A.2d 448 (2002) ).
Here, defendant failed to timely object to the map's authentication. When the State attempted to move the map into evidence at trial, defense counsel objected only on the ground that the map presented in court was a copy of the official map and that the State should have to produce a copy with a raised seal or the original. In response, the trial court stated that although a copy is permissible, he could require the State to produce the city engineer to testify. Defense counsel then failed to accept the trial court's offer to require that the State produce the city engineer. Instead, defense counsel merely renewed his objection to the admission of the copy into evidence.
Defense counsel never objected to the map as testimonial, or claimed its admission without proper authentication violated defendant's right to confrontation. The objection put forth was based only on admission of a copy rather than the original. We conclude, therefore, that defendant failed to raise authentication of the map under Wilson as an issue before the trial court. Because defense counsel did not object on the same ground on which he challenges the admission of the map before this Court, we would ordinarily review the admission of the map for plain error. See State v. Nunez, 436 N.J. Super. 70, 76, 91 A.3d 660 (App. Div. 2014).
We do not reach plain error review, however, because we find that defendant waived any objection to the map's authenticity or to the fact that it is a copy when defense counsel did not accept the trial court's offer to require the State to bring in the city engineer to testify, and instead proceeded as if the offer had never been made. It is a longstanding principle that litigants may waive objections through inaction. See Agnew v. Campbell's Adm'rs, 17 N.J.L. 291, 298 (Sup. Ct. 1839) (Dayton, J., concurring) (noting that counsel could, "by their silence" and failure to call sealing judge to testify, waive their objection to, and therefore their right to test, authenticity of judicial seal placed on bill of exceptions); accord State v. T.J.M., 220 N.J. 220, 231, 105 A.3d 1071 (2015)
**93 (finding objection waived where counsel raised "tepid complaint" of prosecutorial misconduct before *945 trial court and then, when trial court "expressly" discussed issue with counsel, "dropped the topic and began to argue another issue instead").
Here, counsel's objection was lacking as to the authentication of the map, see Wilson, 227 N.J. at 534, 152 A.3d 930, and the defense failed to avail itself of the opportunity to test the authenticity of the map offered by the trial court. We therefore find that counsel waived any objection as to the map's authentication.
IV.
A.
We now turn to whether defendant's right to a grand jury indictment was violated when the trial court permitted the prosecutor to amend count two of the indictment.
The New Jersey Constitution provides that
[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases now prosecuted without indictment, or arising in the army or navy or in the militia, when in actual service in time of war or public danger.
[ N.J. Const. art. I, ¶ 8.]
This Court has stated that the right is satisfied where the indictment "inform[s] the defendant of the offense charged against him, so that he may adequately prepare his defense," State v. LeFurge, 101 N.J. 404, 415, 502 A.2d 35 (1986) (quoting State v. Lefante, 12 N.J. 505, 509, 97 A.2d 472 (1953) ), and is "sufficiently specific" both "to enable the defendant to avoid a subsequent prosecution for the same offense" and " 'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge,' " ibid. (quoting State v. Boratto, 80 N.J. 506, 519, 404 A.2d 604 (1979) ).
To meet those criteria, an "indictment must allege all the essential facts of the crime." Id. at 418, 502 A.2d 35 (quoting State v. La Fera, 35 N.J. 75, 81, 171 A.2d 311 (1961) ). Thus, "the State **94 must present proof of every element of an offense to the grand jury and specify those elements in the indictment." State v. Fortin, 178 N.J. 540, 633, 843 A.2d 974 (2004). Said another way, in determining the sufficiency of an indictment under the New Jersey Constitution, "[t]he fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged. The key is intelligibility." State v. Wein, 80 N.J. 491, 497, 404 A.2d 302 (1979). In making that determination, the court looks to whether the indictment is sufficiently specific "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." LeFurge, 101 N.J. at 415, 502 A.2d 35 (quoting Boratto, 80 N.J. at 519, 404 A.2d 604 ).
By court rule,
[t]he court may amend the indictment ... to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense.
[R. 3:7-4.]
An error relating to the substance or "essence" of an offense cannot be amended by operation of that rule. See State v. Middleton, 299 N.J. Super. 22, 34, 690 A.2d 623 (App. Div. 1997) ; Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 3:7-4 (2018).
*946 Courts may generally grant leave to amend a date in an indictment, but the court may not do so where such an amendment goes to the core of the offense or where it would prejudice a defendant in presenting his or her defense. See Middleton, 299 N.J. Super. at 34, 690 A.2d 623. Likewise, a trial court may amend an indictment charging a defendant with first-degree robbery to change the type of weapon used because only the presence of a weapon, not the type of weapon, is an essential element of first-degree robbery. See State v. Lopez, 276 N.J. Super. 296, 307, 647 A.2d 1351 (App. Div. 1994). Similarly, a court may amend an indictment for aggravated sexual assault to change the body part that the defendant is accused of touching because, as with the weapon in Lopez, the particular intimate body part touched is not **95 an element of aggravated sexual assault. See State v. J.S., 222 N.J. Super. 247, 257-58, 536 A.2d 769 (App. Div. 1988).
Under the circumstances reviewed in Lopez and J.S., there was no prejudice to the defendants or lack of notice of the charges against them. See Lopez, 276 N.J. Super. at 307, 647 A.2d 1351 ; J.S., 222 N.J. Super. at 257-58, 536 A.2d 769. However, the degree of a crime is an essential element that must be included in the indictment. See, e.g., State v. Catlow, 206 N.J. Super. 186, 194-95, 502 A.2d 48 (App. Div. 1985).
In Catlow, the defendant was charged with robbery in an indictment that did not provide any degree of offense and, over the defendant's objection, the trial court instructed the jury on first-degree robbery. Ibid. The Appellate Division reversed because it "consider[ed] determination of the degree of a crime to be an essential element of the grand jury function" and, even though the State presented evidence that the grand jury heard testimony relating to a first-degree offense, the robbery count of the indictment provided no facts or statutory language demonstrating that the State had provided to the grand jury sufficient evidence of a first-degree charge. Id. at 195, 502 A.2d 48. The panel went on to say that
[t]he State's reference to the distinction between first and second-degree robbery as being merely one of grading is to our view unrealistic in light of the importance of such distinction to a defendant. This distinction may be of far greater consequence to an accused than the obtaining of an acquittal on a crime of a lesser degree.
[ Ibid..]
See also State v. Smith, 253 N.J. Super. 145, 148 n.2, 601 A.2d 247 (App. Div. 1992) (noting that factors relating to the degree of offense should be treated "as elements of the offense to be decided by the fact finder"); cf. State v. D'Amato, 218 N.J. Super. 595, 605-07, 528 A.2d 928 (App. Div. 1987) (recognizing that grading provisions are elements of offense but finding no plain error when indictment failed to specify that defendant was charged with third-degree theft, because he testified that he had sold victim's jewelry for an amount that exceeded threshold amount for third-degree offense).
**96 Similarly, a "trial court may not amend an indictment to charge a more serious offense," State v. Orlando, 269 N.J. Super. 116, 138, 634 A.2d 1039 (App. Div. 1993), because the amendment would subject the defendant to a charge of "an entirely different character and magnitude," thereby depriving him of the opportunity to mount a meaningful defense, cf. State v. Koch, 161 N.J. Super. 63, 65-67, 390 A.2d 1192 (App. Div. 1978). For example, the State is required to enumerate the value of stolen goods in a theft charge because that fact impacts the degree of the crime *947 charged and, therefore, the extent of a defendant's penal exposure; it is thus an element of the crime. See D'Amato, 218 N.J. Super. at 607, 528 A.2d 928.
In sum, the analysis as to whether an indictment was sufficient and whether an amendment under Rule 3:7-4 was appropriate hinges upon whether the defendant was provided with adequate notice of the charges and whether an amendment would prejudice defendant in the formulation of a defense. See LeFurge, 101 N.J. at 415, 502 A.2d 35 ; Middleton, 299 N.J. Super. at 34, 690 A.2d 623 ; Lopez, 276 N.J. Super. at 307, 647 A.2d 1351 ; J.S., 222 N.J. Super. at 257-58, 536 A.2d 769 ; Catlow, 206 N.J. Super. at 194-95, 502 A.2d 48 ; Koch, 161 N.J. Super. at 65-66, 390 A.2d 1192.
B.
Applying those principles to the case before us, we first reiterate that the degree of the charged crime is an essential element of the crime that must be included in the indictment. As the Appellate Division noted in Catlow, a change in the degree of offense charged has the potential to significantly alter a defendant's penal exposure. See 206 N.J. Super. at 194-95, 502 A.2d 48. Thus, a degree determination is distinct from details such as the weapon used in a robbery or the particular intimate body part touched in an aggravated sexual assault because alterations in those details do not heighten the liability a defendant faces. See Lopez, 276 N.J. Super. at 307, 647 A.2d 1351 ;
**97 J.S., 222 N.J. Super. at 257-58, 536 A.2d 769 ; Catlow, 206 N.J. Super. at 194-95, 502 A.2d 48. Rather, the degree determination is analogous to the requirement that the State enumerate the value of stolen goods in a theft charge, a fact that impacts the extent of a defendant's exposure and is, therefore, an element of the crime. See D'Amato, 218 N.J. Super. at 605-07, 528 A.2d 928.
Here, the trial court and Appellate Division found that count five put defendant on notice that he would be charged with a second-degree offense in count two because count five specifically charged that defendant possessed more than one ounce of marijuana. According to the trial court and Appellate Division, that fact-in conjunction with the citation to N.J.S.A. 2C:35-7.1 in count two-put defendant on notice that count two should have been a second-degree charge. The State adds that count one provided further notice as to the degree of count two.
We disagree that the other counts of the indictment put defendant on notice that he would have to defend against a higher-degree offense than the one charged. Although the count five charge apprised defendant that he would defend against allegations of third-degree possession of more than one ounce of marijuana, nothing on the face of that count of the indictment connected that fact to the count two charge. Similarly, while count one refers to N.J.S.A. 2C:35-7.1, it charges second-degree possession with the intent to distribute heroin, not the marijuana charged in count two. Thus, this case is analogous to Catlow, where the Appellate Division correctly found that it was error for the trial court to instruct the jury on a first-degree offense because the count in the indictment did not contain specific allegations going to an essential element of the offense-the degree. 206 N.J. Super. at 194-95, 502 A.2d 48.
To be sure, the State submitted evidence of defendant's possession of more than one ounce of marijuana to the grand jury. However, the indictment makes no mention of the weight of the marijuana in count two. Thus, even though the grand jury heard evidence and returned an indictment *948 to that effect in count five, **98 there is nothing in the record demonstrating that the grand jury intended to charge defendant with possession of more than one ounce of marijuana in count two or for the defendant to face the heightened criminal liability associated with the higher-degree charge.
Defendant alleges that he was told-prior to the amendment-that he faced a maximum sentence of twenty years' imprisonment, not the thirty years he faced as a result of the eve-of-trial amendment. Defendant further claims that he declined the State's plea offer of five years and proceeded to trial in light of that information.
When determining how best to mount a defense against the charges leveled against them, defendants regularly consider whether to accept or reject a plea offer. We make no determination as to whether defendant would, in fact, have accepted the plea offer had he been aware that he would face up to thirty years' imprisonment. Nevertheless, defendant was entitled to have that information in hand when deciding whether to accept or reject the State's plea offer. Therefore, failing formally to apprise defendant of the State's intent to seek conviction on a second-degree offense in count two until the day before trial began prejudiced defendant.
We conclude that the trial court improperly permitted the State to amend count two of the indictment from a third-degree to a second-degree offense because the amendment was substantive and because defendant was prejudiced by the amendment. See R. 3:7-4. For that reason, the conviction as to count two must be amended to reflect that defendant was convicted of the offense on which he was indicted-a third-degree offense-and defendant must be resentenced on that count.
V.
For the reasons set forth above, we affirm in part and reverse in part the judgment of the Appellate Division. We remand to the trial court for further proceedings consistent with this opinion.
CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and TIMPONE join in JUSTICE SOLOMON's opinion.

A brick of heroin is fifty bags.

75.01 grams equals 2.65 ounces. N.J.S.A. 2C:35-7.1(a) provides that the possession of more than one ounce of marijuana with the intent to distribute within 500 feet of public housing, a public park, or public building is a second-degree offense, whereas the possession of less than one ounce of marijuana under the same circumstances is a third-degree offense.

The Appellate Division panel noted that, initially, the grand jury had indicted defendant on "various CDS offenses," but that the grand jury had returned a superseding indictment thereafter. The charges laid out here reflect those included in the superseding indictment. The original indictment does not appear in the record.