**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0373-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

RODNEY F. BATES, a/k/a
RODNEY F. BATES, JR.,

    Defendant-Appellant.

_____

Submitted December 19, 2018 – Decided June 10, 2019

Before Judges Nugent and Reisner.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-12-3508.

Joseph E. Krakora, Public Defender, attorney for appellant (Tamar Y. Lerer, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from his conviction of the second-degree burglary of his sister's home and the third-degree aggravated assault of his niece. He also appeals his aggregate sentence of ten years in prison, eighty-five percent of which is to be served without parole eligibility, a requirement of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. He presents the following arguments for our consideration:

POINT I
THE AMENDMENT OF THE INDICTMENT, THE MORNING TRIAL BEGAN AND OVER DEFENDANT'S OBJECTION, CHARGING DEFENDANT WITH A MORE SERIOUS OFFENSE THAN THAT FOUND BY THE GRAND JURY CONTRAVENED HIS RIGHT TO INDICTMENT BY THE GRAND JURY AND DEPRIVED HIM OF NOTICE OF THE PENAL CONSEQUENCES OF THE CHARGES.

POINT II
THE JURY INSTRUCTION ON BURGLARY LEFT OPEN THE POSSIBILITY OF A NON-UNANIMOUS VERDICT AND WAS NOT SUFFICIENTLY TAILORED TO THE FACTS OF THE CASE. FOR BOTH REASONS, THE BURGLARY CONVICTION MUST BE REVERSED. (NOT RAISED BELOW)

A. The Jury Charge In This Case Was Insufficient To Ensure a Unanimous Verdict.

B. The Jury Instruction on Burglary Was

Insufficient To Ensure That Defendant
Was Properly Convicted Of Burglary.

POINT III
THE TRIAL COURT'S REFUSAL TO SANITIZE
THE 9-1-1 CALL ALLOWED THE BACKDOOR
ADMISSION OF THE OTHER-BAD-ACT
EVIDENCE THAT THE COURT HAD RULED WAS
INADMISSIBLE AT TRIAL. THE RESULTING
PREJUDICE NECESSITATES REVERSAL OF
DEFENDANT'S CONVICTIONS.

POINT IV
THE TRIAL COURT FAILED TO ACCOUNT FOR
DEFENDANT'S AGE AND PHYSICAL
INFIRMITIES WHEN SENTENCING DEFENDANT,
RESULTING IN AN EXCESSIVE SENTENCE.
THEREFORE, THE SENTENCE MUST BE
VACATED AND THE CASE REMANDED FOR
RESENTENCING.

In addition, in a pro se supplemental brief that has no point headings,

defendant argues there was insufficient evidence that he did not have permission

to enter his sister's home to visit his mother. He also argues: he did not receive

discovery; the prosecutor withheld exculpatory evidence; the attorney who

represented him before trial did not seek discovery of a police report containing

exculpatory evidence; his attorney did not call as a witness the police officer

who wrote the report containing the exculpatory evidence; and his original

attorney was replaced by an inexperienced attorney who did not seek to obtain

important discovery and exculpatory evidence.

A-0373-17T3

Finding merit in defendant's first point, we remand for correction of the Judgment of Conviction to reflect that on the first count defendant was convicted on the offense charged in the indictment – third-degree burglary – and for resentencing on that count. Finding no merit in the remaining points, we reject defendant's request for a new trial. Concluding that the only possibly meritorious points in defendant's pro se brief are, in essence, allegations that the attorneys who represented him did so ineffectively, we decline to consider them; they are better suited for disposition in the context of a petition for post-conviction relief.

I.
A.

A Camden County grand jury charged defendant in a four-count indictment with the following offenses: second-degree burglary, N.J.S.A. 2C:18-2(a)(1) (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); and third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four).

The Indictment's first count provided in pertinent part:

> The Grand Jurors of the State of New Jersey, for the County of Camden, upon their oaths present that, on or about the 10th day of September, 2015, in the Borough

4

of Somerdale, County of Camden, aforesaid, and within the jurisdiction of this Court,

**RODNEY F BATES**

did unlawfully enter the structure of [his niece] at [her address] with the purpose to commit an offense therein;

contrary to the provisions of N.J.S. 2C:18-2a(1), and against the peace of this State, the Government and dignity of the same.

2C:18-2a(1) Burglary – Second Degree[1]

Defendant's jury trial took place in March 2017. On the morning testimony was to begin, after giving the impaneled jury preliminary instructions but before the attorneys gave opening statements, the court heard defendant's motion to dismiss the indictment's first count. The court listened to a recording of the grand jury presentment and then heard the attorneys' arguments. During argument, after implicitly acknowledging that count one as drafted did not state the elements of a second-degree offense, the prosecutor "move[d] to amend the body to support or reflect exactly what was said in the grand jury proceedings."

---

[1] Contrary to the suggestion flowing from the "Second Degree" following the statutory reference, N.J.S.A. 2C:18-2(a)(1) is not a second-degree crime; it is a third-degree crime. N.J.S.A. 2C:18-2(b) (providing that with two exceptions involving the infliction or attempt to inflict bodily injury, or the display of what appear to be explosives or a deadly weapon, "burglary is a crime of the third degree").

The court granted the prosecutor's motion.  In granting the prosecutor's oral motion to amend the indictment, the court noted:

> In the body of the indictment on count one it does not have the language that bumps it to a second-degree, which would mean that in the course of committing the offense the actor - - and I'm citing from [N.J.S.A. 2C:18-2(b)(1) and (2)] - - "purposely, knowingly or recklessly inflicts, attempts to inflict, or threatens to inflict bodily injury on anyone or is armed with or displays what appears to be explosives or a deadly weapon."

The court nonetheless determined the testimony the State elicited from a police officer before the grand jury "fits the definition, at least a prima facie definition of a prima facie case, of second-degree."  The court reiterated the officer's testimony "sets forth a prima facie case and enough evidence to formally charge the defendant with second-degree."  In addition, the court noted that the prosecutor, when asking the grand jury "to rule on or make a vote on what the indictment would be, . . . said 'that's actually a second-degree offense.'"

The court disposed of three other motions, none of which are at issue on this appeal.  The jury convicted defendant on the indictment's first two counts and acquitted him of the third and fourth counts.  At sentencing, the judge

6

merged the third-degree assault into the second-degree burglary and sentenced defendant to a ten-year prison term subject to NERA.[2]

B.

The parties presented the following proofs at trial. Defendant's elderly mother lived in Somerdale with her daughter, who was defendant's sister; and her granddaughter, who was defendant's niece. Defendant's mother had deeded the home to defendant's sister in July 2004. His sister and niece cared for his mother. Defendant was not permitted to enter the home unless his sister was present.

His sister was not at home on September 10, 2015. She was working a twelve-hour shift. Defendant's niece was caring for his mother that day. His niece testified that she had moved into the Somerdale home to help her mother care for her grandmother, who had fallen ill. She described defendant as, among other things, "a little bit of a bully to everybody in the family including [his mother]."

Defendant's niece explained that defendant was not permitted to come to the house unless he first made an appointment. He was allowed to use the

---

[2] The Judgment of Conviction specifies the statutory offense of third-degree aggravated assault as 2C:12-1(a)(1), not 2C:12-1(b)(7), the offense charged in the indictment of which defendant was found guilty.

detached garage, where he stored some of his belongings. Defendant's niece also testified that defendant never came to the home when she was alone with her grandmother, because she felt uncomfortable around him.

Defendant's niece was up early on September 10, 2015. She was alone with her grandmother in the home when she heard the trash trucks and realized she had forgotten to take out the trash. She ran out to take out the trash, and while doing so, defendant pulled up in her grandmother's Cadillac and began to ridicule her. He got out of the car and began "gunning" for the door. She pleaded with him not to go in, saying he was not allowed, her grandmother was not well, and her grandmother was sleeping.

According to defendant's niece, defendant entered the home. She ran behind him and grabbed the door knob. He reached for the slide lock and she "ripped" open the door and was able to stand in front of the door, her body between the door and defendant, so that he would not lock her out of the house. He pushed his body into hers, and hers in turn was propelled against the door and shattered the glass. Defendant picked up a piece of triangular-shaped glass and held it near his niece.

Defendant's niece testified that she and defendant struggled. During the struggle, he managed to get a fistful of her hair at the top of her head. As the

struggle continued, defendant's niece fell to the ground and he jumped on top of her and pinned her down with his hands. She cried and screamed, and she eventually stood up. She was able to re-enter the house, grab her cell phone, and call 9-1-1. Defendant went to her grandmother's room.

Defendant's niece heard defendant talking to her grandmother and attempting to blame her for the broken door. He came out while she was speaking to the dispatcher, grabbed her by the neck, pinned her against the wall, and punched her in the face twice. Her grandmother came out with her walker. Defendant's niece called 9-1-1 again, having been disconnected during the first call. Defendant left.

Recordings of the two 9-1-1 telephone calls where played for the jury. In the first call, defendant's niece told the dispatcher her uncle had broken the glass in a door and broken into the house. "My uncle just broke into the house. We were just wrestling outside. He broke the glass. . . . he's coming after me right now. He just punched me." When defendant's niece called 9-1-1 the second time, she said her uncle "had me pinned under the chair pounding me in the face." In the second call, in response to the dispatcher's question, "what's going on there," defendant's niece responded: "I have an abusive, crazy uncle who stops by from time to time. Today he decided to break the glass on my

A-0373-17T3

grandmother's porch, break in and then proceeded to punch me in the face and pull my hair."

Defendant's niece explained during her testimony that when defendant arrived at the house, the door was unlocked because she was taking out the trash. She normally locked the doors. She locked the doors to keep defendant out, because when he came in, he would refuse to leave or display a "bully kind of mentality." Defendant's niece also explained that defendant had locked her out of the house on previous occasions.

Clumps of defendant's niece's hair had fallen out after he pulled it. The State presented photographic evidence of her hair as well as her two black eyes. The State also presented photographic evidence of the area where the struggle occurred, including a photograph of the shattered door.

Defendant testified to a different version of the events. He said he was unaware of any understanding among his mother, sister, and niece that he was not allowed to enter the house unless his sister was present. According to him, the opposite was true; his mother wanted him there. He had no idea his mother had deeded the home to his sister until he saw the deed a couple of days before trial when he and his attorney were reviewing discovery. Neither his mother nor

A-0373-17T3

his sister had ever told him that title of the house had been transferred to his sister.

Turning to the events of September 10, 2015, defendant said he drove to his mother's home that morning to visit her. He drove into the driveway, passed his niece, who was taking out the trash, and walked toward the door. He thought he heard his niece say something but he told her did not have time and continued to walk toward the door.

Defendant said that as he began to open the door to enter the home to see his mother, his niece came from behind him, slipped under his arm, and got between him and the door. According to defendant, her hair got caught in the latch and lock and she thought he was pulling it. She stomped on his foot three times and broke his toe. In pain, he lifted his foot, and she pushed him to the ground.

As he lay on the ground he watched his niece rip her hair out from the lock, screaming "ouch" as she did so. She then came at defendant with her foot and tried to kick him again.

Defendant had to hop into the house to see his mother, because his foot was severely injured. He told his mother his niece was starting something and asked his mother to come out and intercede. His mother came out. It appeared

11

to him that his niece was getting a knife out of a kitchen drawer, so he told his mother he was leaving and he left, wanting to get away from his attacker.

Defendant repeated that he had gone to the home for no other reason than to visit his mother. He explained that he lives in Florida during the winter, and when summer is over, he returns there. He knew his mother's health was failing and wanted to visit her before returning to Florida for the winter.

During cross-examination defendant was confronted with photographs of his niece's injuries. He denied inflicting them. He said the photographs of her face looked "like all smeared makeup." As to her other injuries, he testified: "I feel as though she inflicted them upon herself by attacking me from behind and putting her head in a position where her hair was caught and the way she ripped her hair out." Defendant insisted he was "not responsible for her actions. She was the aggressor, not [him]." He claimed he never touched her.

The jury rejected defendant's version of the events and convicted him of burglary and aggravated assault.

## II.
### A.

In his first point, defendant argues that by permitting the State to amend the indictment immediately before the parties presented their opening statements to the jury, the trial court deprived him of his constitutional right to indictment

by grand jury. Defendant adds that the last-minute amendment deprived him of his right to fair notice of the charges against him and resulted in his conviction on a charge for which he had not been indicted.

The State responds that the first count's deficiency is nothing more than a clerical error. The State emphasizes defendant could not have been prejudiced because during the pretrial conferences and the pretrial plea negotiations defendant heard the trial court and the prosecutor discuss the charges against him, including the crime of second-degree burglary. The State also points out that in all of the plea negotiations, including those for which there were on-the-record discussions, defendant was informed of the penalty for second-degree burglary. Consequently, defendant could not have been prejudiced by the clerical error in the indictment.

B.

The New Jersey Constitution guarantees that

> [n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases of impeachment, or in cases now prosecuted without indictment, or arising in the army or navy or in the militia, when in actual service in time of war or public danger.
>
> [N.J. Const. art. I, ¶ 8.]

"That constitutional provision requires that the State present to the grand jury proof to support every element of the offense before the return of an indictment and that every element must be alleged in the indictment." State v. Fortin, 178 N.J. 540, 633 (2004) (citing State v. Hogan, 144 N.J. 216, 227 (1996)). Moreover, "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 476 (2000) (quoting Jones v. United States, 526 U.S. 227, 243, n.6 (1999).

Our Supreme Court has explained that a defendant's right to a grand jury indictment is satisfied if the indictment informs the defendant of the offense charged so that he can adequately prepare his defense, "and is 'sufficiently specific' both 'to enable the defendant to avoid a subsequent prosecution for the same offense' and 'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge.'" State v. Dorn, 233 N.J. 81, 93 (2018) (quoting State v. LeFurge, 101 N.J. 404, 415 (1986)). The Supreme Court has further explained that "[t]o meet those criteria, an 'indictment must allege all the essential facts of the crime.'" Ibid. (quoting LeFurge, 101 N.J. at

418).  "Thus, 'the State must present proof of every element of an offense to the grand jury and specify those elements in the indictment.'"  Id. at 93-94 (quoting Fortin, 178 N.J. at 633).

A court "may amend the indictment . . . to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense."  R. 3:7-4.  The Supreme Court has cautioned that "[a]n error relating to the substance or 'essence' of an offense cannot be amended by operation of that rule."  Dorn, 233 N.J. at 94 (citing State v. Middleton, 299 N.J. Super. 22, 34 (App. Div. 1997)).  Thus, "a 'trial court may not amend an indictment to charge a more serious offense,' State v. Orlando, 269 N.J. Super. 116, 138 (App. Div. 1993), because the amendment would subject the defendant to a charge of 'an entirely different character and magnitude,' thereby depriving him of the opportunity to mount a meaningful defense, cf.  State v. Koch, 161 N.J. Super. 63, 65-67 (App. Div. 1978)."  Id. at 96.

C.

These principles should have precluded the amendment of the indictment. The amendment did not merely "correct an error in form or the description of

the crime intended to be charged," but rather "charge[d] another or different offense from that alleged." R. 3:7-4. The amendment related to the substance or essence of the offense, and therefore was precluded by the rule. Dorn, 233 N.J. at 94.

The State argues that because the evidence presented to the grand jury established second-degree burglary, because the grand jury was asked to consider returning an indictment for second-degree burglary, and because the plea negotiations during many pretrial proceedings centered around a plea to second-degree burglary and included a judge explaining to defendant the maximum exposure he would face for that crime if he proceeded to trial, there was no prejudice to defendant. We disagree that such circumstances, even if true, can substitute for a proper grand jury indictment.

We have previously concluded, in the context of a robbery indictment, that the indictment was inadequate, notwithstanding that the presentation to the grand jury supported it:

> In the absence of the inclusion of either facts or statutory language constituting a first-degree robbery, there can be no determination by a reviewing court as to whether or not the grand jury, although hearing sufficient evidence to constitute a first degree robbery, accepted or rejected such evidence. The indictment in question does not demonstrate a grand jury

16

determination that it was satisfied that a first-degree crime had occurred.

[State v. Catlow, 206 N.J. Super. 186, 195 (App. Div. 1985).]

Prejudice is certainly a consideration. Rule 3:7-4 provides that an indictment may be amended "to correct an error in form or the description of the crime intended to be charged . . . provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense." The terms of this rule are conjunctive, not disjunctive; the amendment must not charge another or different offense, and must not prejudice the defendant. Thus, if the indictment charges a different offense – as is the case here – it may not be amended under the rule, even in the absence of prejudice.

We thus reverse the conviction for second-degree burglary. Because the trial court's charge to the jury clearly encompassed the lesser-included offense of third-degree burglary, we remand this matter to the trial court to re-sentence defendant and to amend the Judgment of Conviction accordingly.

## III.

In the second argument in his first brief, defendant contends the jury instruction on burglary left open the possibility of a non-unanimous verdict and

A-0373-17T3

was not sufficiently tailored to the facts of the case. Noting the State's theory was that he "entered the home with the intent to commit the offense of harassment," defendant asserts the court's charge on burglary was confusing and "created a risk of a non-unanimous verdict because it presented the jury with two different potential victims of the alleged harassment and three different theories of harassment without telling the jury it had to unanimously agree on both the victim and the crime."

Defendant did not object to the trial court's instructions to the jury on burglary. We find the argument he raises for the first time on appeal to be without sufficient merit to warrant discussion. R. 2:11-3(e)(2).

We reach the same conclusion as to defendant's third argument: the trial court's failure to redact the niece's reference to defendant as "an abusive, crazy uncle who stops by from time to time" requires a new trial. Defendant's niece testified, without objection, that she kept the doors locked in her mother's home specifically to keep defendant out, because, among other things, of his bullying tactics. The niece's testimony about why she kept the doors locked, as well as her testimony describing what defendant did when he assaulted her, render relatively innocuous – harmless error in legal terminology, R. 2:10-2 – the

comments she made to the dispatcher while in a state of emotional turmoil. This argument warrants no further discussion. R. 2:11-3(e)(2).

IV.

In his pro se brief, defendant raises numerous instances in which he claims that both the first attorney who represented him and the attorney who represented him at trial were ineffective. We generally decline to consider ineffective-assistance-of-counsel claims on direct appeal, "because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). Defendant's allegations concerning the attorneys who represented him are based on numerous assertions in his pro se brief for which there is no support in the record. Accordingly, we decline to hear them without prejudice to defendant's right to file a petition for post-conviction relief.

We have considered defendant's remaining arguments and find them to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0373-17T3