**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4124-18T4

STATE OF NEW JERSEY,

      Plaintiff-Appellant,

v.

SAAD A. SAAD,

      Defendant-Respondent.

_____

**APPROVED FOR PUBLICATION**

**November 27, 2019**

**APPELLATE DIVISION**

Argued October 10, 2019 – Decided November 27, 2019

Before Judges Nugent, Suter and DeAlmeida.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 17-10-1485.

Monica Lucinda do Outeiro, Assistant Prosecutor, argued the cause for appellant (Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney; Monica Lucinda do Outerio, of counsel and on the briefs; Heather A. Muh, Legal Assistant, on the brief).

Michael J. Pappa argued the cause for respondent (Rudnick Addonizio Pappa Casazza, PC, attorneys; Michael J. Pappa, of counsel and on the brief; Jeffrey Zajac, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

On leave granted, the State appeals from the April 8, 2019 order of the Law Division amending the five counts of a ten-count indictment against defendant Saad A. Saad charging him with second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). The amendment lowered the five counts to charge third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). We affirm.

I.

The State presented evidence to a grand jury that defendant, a pediatric surgeon, molested four teenage patients during and after medical examinations. The grand jury indicted defendant, charging him with five counts of fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b), and five counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). The child endangerment counts alleged defendant had a legal duty, or had assumed responsibility, for the care of the victims at the time of the sexual contact.

Defendant moved to dismiss the five counts charging him with endangering the welfare of a child. He argued the State could not make a prima facie showing he had a legal duty for the care of his victims or had assumed responsibility for their care, a statutory element of second-degree endangering the welfare of a child. In addition, defendant argued, the court lacked authority to amend the indictment to reduce the charges to third-degree

counts, which do not have a legal duty or assumption of responsibility element. Defendant did not seek dismissal of the criminal sexual contact counts.

On April 8, 2019, the trial court granted the motion in part and denied the motion in part. In a written opinion, the court concluded that even when the evidence presented to the grand jury is viewed in the light most favorable to the State, defendant, while obligated to provide medical treatment to his victims, did not have a legal duty, and had not assumed responsibility, for the care of the victims within the meaning of N.J.S.A. 2C:24-4(a)(1).

The court also rejected the argument that N.J.A.C. 13:35-6.3(c), a regulation of the Board of Medical Examiners (BME) prohibiting sexual contact between a physician and his or her patient, created a legal duty for the care of the victims within the meaning of N.J.S.A. 2C:24-4(a)(1). The court found violation of the regulation subjects a physician to discipline by BME, but not criminal liability. Thus, the court concluded the State could not establish defendant committed second-degree endangering the welfare of a child.

The court found third-degree endangering the welfare of a child, also codified at N.J.S.A. 2C:24-4(a)(1), includes all the elements of second-degree endangering the welfare of a child, except for a legal duty or assumed responsibility for the care of the child. Therefore, the court concluded, the

indictment put defendant on notice of third-degree endangering the welfare of a child charges. Because lowering the charges from second degree to third degree would benefit defendant, the court concluded amendment of the five counts to third-degree counts was permissible under Rule 3:7-4.[1]

On April 8, 2019, the court entered an order amending the five counts of the indictment to charge third-degree endangering the welfare of a child.[2]

We granted the State's motion for leave to appeal. The State makes the following argument for our consideration:

> THE LOWER COURT ERRED IN DISMISSING THE SECOND-DEGREE ENDANGERING ENHANCER BECAUSE THE DEFENDANT, A DOCTOR, HAD A LEGALLY-RECOGNIZED DUTY TO CARE FOR HIS VICTIM-PATIENTS.

[1] The sentencing exposure for a second-degree crime is between five and ten years and for a third-degree crime between three and five years. N.J.S.A. 2C:43-6(a)(2) and (3). In addition, conviction of a second-degree crime carries a presumption of imprisonment generally not applicable to a third-degree crime. N.J.S.A. 2C:44-1(d) and (e). The degree of a crime is an essential element of the charge that cannot be increased through amendment. State v. Dorn, 233 N.J. 81, 95-96 (2018).

[2] The April 8, 2019 order purports to both dismiss the five counts and to amend those counts. Dismissal of an indictment and its amendment are mutually exclusive forms of relief. State v. Blackman, 125 N.J. Super. 125, 129-30 (App. Div. 1973). If an "indictment fully and clearly informed [a] defendant[] of the factual charges" against him, amendment to state "the appropriate statute[] violated" is permitted, if doing so "would in no way impair [his] ability to prepare [his] defense[] . . . ." Id. at 129. Dismissal is justified when an indictment's "insufficiency has been palpably demonstrated." Id. at 130. We interpret the April 8, 2019 order as amending the indictment.

A-4124-18T4

Defendant did not seek leave to appeal the amendment of the indictment.

II.

The New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury, except in cases" not applicable here. N.J. Const. art. I, ¶ 8. An indictment "informs[s] the defendant of the offense charged against him, so that he may adequately prepare his defense." Dorn, 233 N.J. at 93 (alteration in original) (quoting State v. LeFurge, 101 N.J. 404, 415 (1986)). The indictment, therefore, must "allege[] all the essential facts of the crime" charged. State v. L.D., 444 N.J. Super. 45, 55 (App. Div. 2016) (quoting State v. N.J. Trade Waste Ass'n, 96 N.J. 8, 19 (1984)). In addition, the State must present proof to the grand jury of every element of an offense and allege those elements in the indictment. State v. Fortin, 178 N.J. 540, 633 (2004).

We review the evidence presented to the grand jury in a light most favorable to the State. State v. Morrison, 188 N.J. 2, 12-13 (2006). In addition, we review an order determining the sufficiency of an indictment for an abuse of discretion. State v. Tringali, 451 N.J. Super. 18, 27 (App. Div. 2017). When that determination turns on a legal question, as is true here, our review is de novo. State v. Twiggs, 233 N.J. 513, 532 (2018).

A-4124-18T4

The State argues the evidence presented to the grand jury, when viewed in a light most favorable to the State, establishes each element of the five counts of the indictment charging second-degree endangering the welfare of a child.  N.J.S.A. 2C:24-4(a)(1) provides:

> Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child who engages in sexual conduct which would impair or debauch the morals of the child is guilty of a crime of the second degree.  Any other person who engages in conduct or who causes harm as described in this paragraph to a child is guilty of a crime of the third degree.

At issue here is the statutory distinction between a second-degree offense and a third-degree offense under the statute, which depends on whether the State can prove the actor has "a legal duty for the care of a child or . . . assumed responsibility for the care of a child . . . ."  N.J.S.A. 2C:24-4(a)(1).  Our Supreme Court has interpreted this provision narrowly.

In State v. Galloway, 133 N.J. 631, 638 (1993), Galloway was at his girlfriend's home when she left to run an errand.  She left her three-month-old son with Galloway.  Ibid.  When the baby started crying, Galloway picked him up and violently shook him, causing injuries that lead to the child's death.  Id. at 637-38.  In addition to murder, Galloway was charged with what is now

second-degree endangering the welfare of a child.  Id. at 640.[3]  After his conviction, Galloway challenged a jury instruction that he could be found guilty if "on the basis of all of the surrounding circumstances," the jury found he had "assumed responsibility for the care of" the child.  Id. at 658.

Finding the statute ambiguous, the Court examined its legislative history and discovered that when enacting N.J.S.A. 2C:24-4(a), the Legislature incorporated into the criminal code the existing law of abuse, abandonment, cruelty, and neglect of children as those terms were defined in Title 9.  Id. at 659 (citing N.J.S.A. 9:6-1, -3, and -8.21).  Title 9 pertains to offenses against children by a "person having the care, custody or control of any child."  Ibid. After examining the relevant Title 9 provisions, the Court held:

> [W]e can reasonably infer that the Legislature intended the crime of third [now second]-degree child endangerment to apply to a person who has "assumed the care of a child" or is "living with the child" or has a "general right to exercise continuing control and authority over" the child.

---

[3] At the time Galloway was charged, what is now second-degree endangering the welfare of a child was a third-degree offense and applied to an actor with a legal duty for the care of the child or who assumed the responsibility for the care of the child and engaged in sexual conduct which would impair or debauch the morals of the child or who "caused harm that would make the child an abused or neglected child as defined in" Title 9.  Id. at 657.  In 1992, the Legislature amended the statute to elevate the offense to second-degree without changing the provisions of the statute regarding the actor's legal duty or assumed responsibility for the care of the child.  L. 1992, c. 6, § 1.

[Ibid.]

The Court noted an enhanced degree is warranted by the "profound effect on the child when the harm is inflicted by a parental figure in whom the child trusts." Id. at 661 (citing State v. Miller, 108 N.J. 112, 120 (1987)). Thus, the Court held the higher degree of the crime applies

> to those who have assumed a general and ongoing responsibility for the care of the child. That responsibility may be legal and formal or it may arise from informal arrangements. It may be based on a parental relationship, legal custody, or on less-structured relations; or it may arise from cohabitation with the child's parent. The actor, however, must have established a continuing or regular supervisory or caretaker relationship with the child that would justify the harsher penalties of the [higher]-degree crime of child endangerment under N.J.S.A. 2C:24-4. Conversely, a person assuming only temporary, brief, or occasional caretaking functions, such as irregular or infrequent babysitting, would be chargeable with child endangerment in the [lesser] degree.

> [Id. at 661-62.]

In light of its holding, the Court concluded the evidence was insufficient to justify submission of the higher-degree charge to Galloway's jury. Id. at 662. As the Court explained, Galloway "did not live with or near" the child or the child's mother. Ibid. He had dated the mother for three months and visited her on a weekly basis. In addition, there was no evidence Galloway "had ever regularly, frequently, or continuously assumed the care of the child." Ibid. A

jury, therefore, could not reasonably conclude he "assumed the kind of ongoing and continuous caretaking or supervisory responsibilities over the child that would be essential to establish the" higher-degree charge. Ibid.

We have found only one published opinion in which an appellate court held the legal duty for the care or assumption of responsibility element of N.J.S.A. 2C:24-4(a)(1) had been established outside of a parent-child relationship. In State v. McInerney, 428 N.J. Super. 432, 435 (App. Div. 2012), McInerney was the coach of a high school's baseball team, and head of the school's baseball program. On several occasions, McInerney traveled out-of-state with student members of sports teams. Id. at 436. He also took team members on personal weekend trips to see professional baseball games in Boston and Chicago, met at home with a boy who was thinking of joining the team, regularly allowed students to stop at his house, hosted a party for a student, and offered to drive students home after sporting events. Ibid. McInerney employed one student in a business he operated outside of school hours, and played tennis with students in his free time. Ibid.

One of McInerney's victims called him after midnight because he consumed too much alcohol and did not want his parents to know his situation. McInerney picked him up and drove him to the student's girlfriend's house. Ibid. Another victim who was in contact with police due to excessive alcohol

consumption contacted McInerney, who intervened on the student's behalf. After the incident, McInerney told the victim to call him every time he returned home from a night out for a month. Ibid. McInerney gave his victims money when they asked and purchased some of them sneakers. Ibid.

McInerney also undertook a lengthy pattern of sexualized behavior with ten of his male students. Id. at 437. He engaged the boys in detailed and persistent discussions regarding their sexual activities and provided them with condoms to, McInerney claimed, promote their abstinence from sexual conduct that could lead to an unplanned pregnancy. Ibid. McInerney asked the boys for evidence of their compliance with his advice and paid some of the boys to record their private sexual behavior with a video camera he supplied. Id. at 437-38. His supervision and sexual involvement with the boys took place during various timeframes. "The shortest of the periods was about five months, and the longest was about two years." Id. at 438.

After his conviction of ten counts of second-degree endangering the welfare of a child, McInerney argued that he did not have a legal duty for the care of the children and had not assumed responsibility for their care. Id. at 441. We noted the Supreme Court's interpretation of N.J.S.A. 2C:24-4(a) in Galloway and the fact the Legislature amended the statute on numerous occasions after that decision, but did not alter its legal duty or assumed

responsibility language, which we described as "persuasive evidence of the Legislature's agreement with the Court's interpretation." Id. at 442 (citing Quaremba v. Allan, 67 N.J. 1, 14-15 (1975)).

We held that the evidence, viewed in the light most favorable to the State, was "adequate to prove beyond a reasonable doubt that [McInerney] had 'assumed responsibility for the care of' these children when he engaged in conduct endangering their welfare." Id. at 443. We explained,

> A jury could find that [McInerney] supervised these children, who trusted and admired him, on a regular and continuing basis, over extended periods of time and in matters generally committed to a child's parents.
>
> . . . .
>
> [He] assumed the role of a regular and primary supervisor in matters particularly suitable for parental oversight and wholly unrelated to performance and behavior on the playing field. The depth of the relationships he established with the children is demonstrated by the fact that several kept in touch with him after reaching the age of majority and graduating from the high school.
>
> [Id. at 443-44.]

In light of the holding in Galloway, we are constrained to agree with the trial court's determination the State has not made a prima facie showing defendant's relationship with his victims satisfied the legal duty or assumption of responsibility element of second-degree endangering the welfare of a child.

Defendant did not have a long-term professional relationship with the victims. He was a surgical specialist to whom the victims were referred for discrete treatment of acute medical conditions. He did not have regular, frequent, or continuous interactions with the victims. His treatments of the victims were limited in duration and frequency. Defendant did not engender trust with his victims on any subject beyond medical care.

Defendant's relationship to the victims was solely that of their physician. While he had a professional obligation to provide appropriate medical treatment to his patients, an obligation he utterly violated if the State's allegations are proven true, defendant did not assume a general and ongoing responsibility for their care within the meaning of N.J.S.A. 2C:24-4(a)(1), as that statute has been interpreted by our courts.

We reject the State's argument that by virtue of his position as a licensed physician defendant had a legal duty for the care of his patients within the meaning of N.J.S.A. 2C:24-4(a)(1), regardless of the duration and extent of his contacts with his patients. In support of its argument, the State relies on N.J.A.C. 13:35-6.3(c), which prohibits a physician from "engag[ing] in sexual contact with a patient with whom he or she has a patient-physician relationship." The regulation provides, however, that violation of its provisions "shall be deemed to constitute gross or repeated malpractice

12

pursuant to N.J.S.A. 45:1-21(c) or (d) or professional misconduct pursuant to N.J.S.A. 45:1-21(e) . . . ." N.J.A.C. 13:35-6.3(j). The statutory provisions cited in the regulation authorize BME to suspend or revoke a license to practice medicine, but do not subject a physician to criminal sanctions.

We do not read N.J.S.A. 2C:24-4(a)(1) to incorporate this regulatory provision as a means for establishing the legal duty for the care element of second-degree endangering the welfare of a child. Nothing in the statute expressly references the regulation, which itself does not refer to criminal sanctions. In addition, we do not accept the premise that the elements of a crime can be defined by an administrative regulation, which can be amended or repealed by BME without involvement of the Legislature. Moreover, interpreting the statute to incorporate the regulation would introduce ambiguity as to which acts constitute criminal behavior, raising serious concerns regarding notice. See State v. Dougherty, 455 N.J. Super. 336, 341 (App. Div. 2018) ("We must strictly construe any reasonable doubt about the meaning of a penal statute in favor of a defendant, applying the rule of lenity.").

Finally, the State's argument, if adopted, presumably would apply second-degree offenses under N.J.S.A. 2C:24-4(a)(1) to a number of licensed professionals who are subject to administrative regulations regarding sexual conduct. See, e.g., N.J.A.C. 13:37-8.3(c) (prohibiting sexual contact between

a person licensed by the Board of Nursing and that person's patient); N.J.A.C. 13:42-10.9(b) (prohibiting sexual contact between a person licensed by the Board of Psychological Examiners and that person's patient); N.J.A.C. 13:35-10.20(c) (prohibiting sexual contact between an athletic trainer licensed by BME and an athlete); N.J.A.C. 13:44E-2.3(c) (prohibiting sexual contact between a person licensed by the Board of Chiropractic Examiners and that person's patient); N.J.A.C. 13:34-19.3(b) (prohibiting sexual contact between a counselor licensed by the Board of Marriage and Family Therapy Examiners and that person's patient); N.J.A.C. 13:37A-3.5(c) (prohibiting sexual contact between a person licensed by the Board of Massage and Bodywork Therapy and that person's client); N.J.A.C. 13:38-2.14(c) (prohibiting sexual contact between a person licensed by the Board of Optometrists and that person's patient). We have seen no indication that the Legislature intended the second-degree provision of N.J.S.A. 2C:24-4(a)(1) to extend that far.

We also reject the State's argument a physician has a common law duty for the care of his patients sufficient to satisfy the legal duty element of second-degree endangering the welfare of a child. See Roe v. Wade, 410 U.S. 113, 130-31 (1973) (discussing the common law duty of a physician to care for his or her patients rooted in the ancient Hippocratic Oath). As was the case with the BME regulation, incorporating a common law duty as an element of a

14

second-degree offense under N.J.S.A. 2C:24-4(a)(1) would create an intolerable ambiguity and extend the statute beyond its intended scope. In addition, when the Legislature intended to include an actor's professional status as an element of a crime, it has done so explicitly. See N.J.S.A. 2C:14-2(c)(2) (defining second-degree sexual assault as an act of sexual penetration with a victim "on probation or parole" or "detained in a hospital, prison or other institution" if "the actor has supervisory or disciplinary power over the victim by virtue of the actor's legal, professional or occupational status . . . .").

Pursuant to Rule 3:7-4,

> [t]he court may amend the indictment . . . to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense on the merits.

The indictment fully and clearly states the acts the State alleges constituted defendant's criminal behavior. It also charges him with endangering the welfare of a child. Amendment of the indictment to lower the degree of the five counts alleging that crime to reflect the removal of the legal duty or assumption of responsibility element of the second-degree offenses does not impair defendant's ability to defend himself.

With our holding today, we in no way intend to minimize the harm inflicted on a minor who is subjected to sexual contact by a physician during a

medical examination. The physician-patient relationship is one of trust. That trust is particularly keen where a patient is a minor. Here, the victims' parents allowed their children to submit to physical examinations by defendant on the understanding that any physical contact initiated by defendant would be medically necessary. A physician's violation of that trust and engagement in sexual contact with a minor patient for his sexual gratification warrants criminal sanction. We are, however, bound by the Supreme Court's interpretation of the elements of the various degrees of endangering the welfare of a child set forth in N.J.S.A. 2C:24-4(a)(1). Lake Valley Assocs., LLC v. Twp. of Pemberton, 411 N.J. Super. 501, 507 (App. Div. 2010); State v. Hill, 139 N.J. Super. 548, 551 (App. Div. 1976). We are also bound by legislative judgment in determining the appropriate sanction for criminal acts.

Affirmed. The matter is remanded for amendment of the April 8, 2019 order to reflect amendment of the five counts of the indictment charging endangering the welfare of a child without dismissal of those counts and for further proceedings consistent with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4124-18T4