**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4668-17

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LARRY DUKES a/k/a
LAKEEM DUKES, LAWRENCE
DUKES, LARRY DUKE,
TERRY T. FOWLER, TERRY
FOWLER,

    Defendant-Appellant.

_____

Argued December 16, 2020 – Decided March 26, 2021

Before Judges Alvarez and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 17-06-0718.

Stephen F. Payerle argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Kelly R. Anderson and Stephen F. Payerle, Designated Counsel, on the briefs).

Nancy A. Hulett, Acting Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex County Prosecutor, attorney; Nancy A. Hulett, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Tried by a jury,[1] defendant Larry Dukes was convicted of second-degree robbery, N.J.S.A. 2C:15-1(a)(1) (Suzanna Paz) (count one); first-degree robbery, N.J.S.A. 2C:15-1(a)(1) (Alberto Rodriguez) (count two); second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2(a)(1) and 2C:15-1(a)(1) (count four); disorderly persons simple assault, N.J.S.A. 2C:12-1(a)(1) (Paz) (count five); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (Rodriguez) (count six); third-degree possession of a controlled dangerous substance, N.J.S.A. 2C:35-10(a)(1) (count seven); and fourth-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2) (count eight). The jury acquitted defendant of an additional charge of second-degree robbery (Norma Ramos-Sanchez) (count three).

On April 5, 2018, the judge granted the State's motion for mandatory extended-term sentencing as a "[r]epeat [v]iolent [o]ffender[,]" N.J.S.A. 2C:43-

---

[1] Defendant was tried with a co-defendant not involved in this appeal.

7.1(b),[2] and imposed a thirty-year term subject to the No Early Release Act's (NERA) eighty-five percent parole ineligibility on count two, into which he merged counts four and six.  See N.J.S.A. 2C:43-7.2.  The judge also merged count five into count one, sentencing defendant to ten years, subject to NERA, to run concurrent to the term defendant would serve on count two.  Count seven, a crime which occurred later, on the date of defendant's arrest, resulted in a consecutive four-year term, to which the one-year sentence imposed on count eight ran concurrent.  Thus, defendant's aggregate sentence was thirty-four years, the first thirty subject to NERA.

In imposing the sentence, the judge accorded great weight to aggravating factors three, six, and nine, and found no factors in mitigation.  He heavily weighed the aggravating factors because of defendant's chronic drug use, failure to comply with probation and parole, approximate forty-six arrests dating back to 1990, at least a dozen indictable convictions, and many disorderly persons and petty disorderly persons convictions.  Defendant appeals.  We affirm.

During the early morning hours of April 10, 2017, Rodriguez, Ramos-Sanchez, and Paz left a nightclub and headed towards a restaurant.  A nearby

_____

[2] Defendant had been previously sentenced for third-degree aggravated assault in 2013 and second-degree possession of a weapon for an unlawful purpose in 1997.  N.J.S.A. 2C:12-1(b); N.J.S.A. 2C:59-4.

surveillance camera captured them on film as they passed by shortly before the robbery. At trial, Rodriguez identified the man, seen wearing a hat, walking behind the group almost immediately after they went out of camera range, as the person who punched him in the head from behind, knocking him to the ground. Paz screamed for help, somehow fell, broke her ankle, and rolled beneath a parked car. Rodriguez attempted to get up to help her, but was struck again by the man with a hat, this time with an object. That blow left a laceration on Rodriguez's forehead requiring twelve stitches that left a visible scar shown to the jury. The man with the hat demanded Rodriguez's money and searched his pockets.

Paz testified that as a result of the ankle break, she underwent surgery, the insertion of fifteen pins, a stay at a physical rehabilitation facility after the initial hospital admission, and spent four months in a wheelchair. By the time of trial in December 2017, she continued to experience pain in her foot and used a cane to walk. Paz's recollection was that as the group was walking, someone demanded their money. She thought the assailants were in front of the group but could not be certain.

Ramos-Sanchez said she saw two men approach from the rear and heard them demand money; she was sprayed in the face with an irritant. She

4

immediately ran to an intersecting street, and the men chasing her turned away. Ramos-Sanchez encountered pedestrians leaving a bar, who called the police on her behalf. Her eye remained cloudy after the incident, although she refused medical attention at the time.

None of the victims, who had been drinking, could identify their attackers. Rodriguez remembered only that the man who struck him in the forehead wore dark clothes and a cap. He initially thought he was hit with a gun, but over time became uncertain as to the nature of the object. Rodriguez and Ramos-Sanchez were sure there were only two assailants; Paz thought there may have been three or four.

New Brunswick Police Sergeant Theirry Lemmerling obtained the surveillance videos, shown to the jury, from two neighborhood stores. He downloaded them onto a flash drive, then transferring them to a disc. During trial, all three victims identified themselves on the video. The person walking closest to the group as it leaves camera range was wearing a hat.

Lemmerling made still photographs from the video footage of the two men walking behind the victims, including the man with a hat. A few days later, two New Brunswick police officers drove by defendant standing at a corner. They

5

had been shown the still photograph that morning and knew there was an outstanding warrant for his arrest related to the robbery.

The officers stopped, and when one of them told defendant he had an arrest warrant, defendant fled. A third officer saw defendant running, saw him discard ten glassine envelopes containing heroin and fiorinal fentanyl, and caught him. When arrested, defendant was carrying a can of pepper spray.

At the station, New Brunswick Police Department Detective Brandt Gregus questioned defendant and showed him the still photo. Defendant admitted he was the man wearing a hat walking a few paces behind the three victims moments before the robbery. That picture was admitted into evidence and shown to the jury when Gregus testified.

After the State rested, defendant moved for a judgment of acquittal on counts one, two, and three—which charged first-degree robbery based on the use of a deadly weapon or an attempt to inflict serious bodily injury. The judge ruled, however, that the State had presented sufficient proof for first-degree robbery on counts one and two based on defendant "inflicting serious bodily injury or attempting to inflict serious bodily injury." As to Ramos-Sanchez, count three, the judge determined that only second-degree robbery would be submitted to the jury. Otherwise, the motion was denied.

A-4668-17

The indictment did not include the following language from the robbery statute as an element of the offense: "[t]hreatens another with or purposely puts him in fear of immediate bodily injury . . . ." N.J.S.A. 2C:15-1(a)(2). During the charge conference, defense counsel objected to the jury being read the corresponding threat-of-force portion of the model jury charge on the basis that it would not mirror the indictment. Model Jury Charges (Criminal), "Robbery in the First Degree (N.J.S.A. 2C:15-1)" (rev. Sept. 10, 2012); Model Jury Charges (Criminal), "Robbery in the Second Degree (N.J.S.A. 2C:15-1)" (rev. July 2, 2009). When asked on the record, the prosecutor could not recall why the indictment language did not include threat of force as an element of the crime and did not object to the omission. The judge acceded—"[I]f . . . there is an objection to it I guess, then, we don't read it."

After the jurors began to deliberate, they posed a number of questions, such as whether "[i]f someone is injured during the course of a crime, is the defendant responsible?" The jurors also asked whether it was necessary for actual physical contact to occur between perpetrator and victim in order to meet the statutory requirements for robbery.

After consideration of the jurors' questions, and an extensive colloquy with counsel, the judge decided to recharge the jury and explain that the threat

of force could indeed constitute a basis for robbery. The judge opined that his failure to have done so initially was an error of law he should correct. He said:

> What I told the jury is . . . an incomplete recitation of the law. And now I'm gonna give the jury a complete recitation of the law.
>
> . . . .
>
> [Someone] asked for money, struck my friend in the face. And I[, Paz,] tried to get away. He may have touched me. He may not have touched me. And I fell to the floor. Or fell to -- she said floor. Fell to the ground. And . . . I injured my ankle. It appears that it was a very serious . . . injury to the ankle.
>
> That's a threat of force. She alighted from the scene or attempted to leave the scene trying to avoid the robbers. And she got hurt in the process. As a result of the use of force. The force . . . the threat of force.
>
> Her friend was struck. She feared she was [going to] be next. It's in the case. I should have charged it. It['s] my obligation to . . . give the jury the law. Notwithstanding what the lawyers say. . . . it's my responsibility, not the lawyer's responsibility[,] to give the law.
>
> [M]y instruction was incomplete. . . . The fact that it . . . was brought to my attention by virtue of the numerous questions raised by the jury, I don't think is -- of great significance.

When the jurors returned from lunch, the judge reinstructed them as follows:

A-4668-17

"In order for you [to] find the defendant guilty of robbery, the State is required to prove each of the following element[s] beyond a reasonable doubt:

One, that the defendant was in the course of committing a theft.

Two, that while in the course of committing that theft, the defendant knowingly inflicted bodily injury or used force upon another."

In . . . actuality, . . . that's part of (a) . . . of two. Part (b) is, "Or threatened another with or purposely put another in fear of immediate bodily injury.["] All right.

So, there's two elements. Just so we're clear. There are two elements to robbery. One that the defendant was in the course of committing a theft.

Two, that either while in the course of committing a theft, the defendant knowingly inflicted bodily injury or used force upon another. Or, alternatively, threatened another with, or purposely put another in fear of bodily injury.

Although no bodily injury need have resulted, the prosecution must prove that the defendant either threatened the victim with, or purposely put the victim in fear of such bodily injury. That's the addition. That's the incomplete part that I didn't give.

Now, this is part and parcel of the entire twenty-eight[-]page instruction. You . . . are to treat this instruction that I gave you . . . and give it the same consideration that you're gonna give to all the other instructions that I gave you. All right.

9

I am not going to at this point, respond to those questions that you've given me in light of my additional instruction dealing with the incomplete version of the law that I gave to you two days ago.

I'm gonna send you back into the jury room. If you have a question, in light of what I just told you, sen[d] it out to me.

The judge gave the charge as to threat-of-force over counsels' strenuous objections and motions for mistrial. The lawyers declined his offer allowing them to make an additional closing argument to the jury. At counsel's request, the judge again told the jury the State had to prove its case beyond a reasonable doubt.

The judge relied upon the principle found in State v. Parsons, 270 N.J. Super. 213, 224-25 (App. Div. 1994), that failure to assist the jury in "understanding issues it must decide" is error. He also told the jury he added parallel language to a revised verdict sheet, which now included the following: "that [defendant] did threaten with or purposely put in fear of immediate bodily injury" upon the three named victims. The day following the supplemental instruction, the jury returned its verdict.

On appeal, defendant raises the following points:

POINT I. DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE THE SURVEILLANCE VIDEO AND PHOTOGRAPH AT THE HEART OF

THE STATE'S CASE DEPICTING DEFENDANT IN THE GENERAL VICINITY OF A CRIME WERE NOT PROPERLY AUTHENTICATED AND SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE.

A. Piecemeal authentication of the surveillance footage was improper and prejudicial.

B. [Defendant's] alleged photograph was not properly authenticated, and even if it had been, the alleged identification did not establish that [defendant] was present at the time of the crime.

1. The photograph was not authenticated and should not have been admitted into evidence.

2. The photograph did not establish that [defendant] was present at the time of the crime.

POINT II. DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE, VIEWING THE EVIDENCE IN ITS ENTIRETY, A REASONABLE JURY COULD NOT HAVE FOUND GUILT BEYOND A REASONABLE DOUBT BECAUSE THE STATE FAILED TO PROVE EACH ELEMENT OF THE CRIMES CHARGED.

A. The State failed to prove second[-]degree robbery and simple assault as to Ms. Paz.

B. The State failed to prove first[-]degree robbery and aggravated assault as to Mr. Rodriguez.

11

POINT III.   THE PROSECUTOR'S COMMENTS DURING OPENING AND SUMMATION MISCHARACTERIZED THE EVIDENCE.

POINT IV.  THE TRIAL JUDGE COMMITTED [PER SE] REVERSIBLE ERROR BY RE-INSTRUCTING THE JURY ON THE ELEMENTS OF ROBBERY AFTER THE CHARGE CONFERENCE, CLOSING ARGUMENTS, TWO DAYS OF JURY DELIBERATIONS, AND SEVERAL POINTED JURY QUESTIONS.

A.   The court expanded the robbery charge by modifying the jury instruction after deliberations began.

1.   The indictment.

2.   The original jury instruction.

3.   Revision of the jury instruction during jury deliberations.

B.   By modifying the jury charge, the trial judge constructively amended the indictment and invaded the province of the grand jury.

C.   Amendment of the indictment is per se reversible error.

POINT V.  THE SENTENCE IMPOSED WAS EXCESSIVE, UNDULY PUNITIVE, AND THEREFORE MUST BE REDUCED.

Defendant raises the following points in a pro se brief:

POINT #1: THE PROSECUTOR IMPROPERLY QUESTIONED SGT. LEMMERLING ABOUT AN

12

IDENTIFICATION MADE BY A NON-TESTIFYING WITNESS, WHICH VIOLATES DEFENDANT'S RIGHTS TO CONFRONTATION AND VIOLATES [THE] VI AMENDMENT [CONCERNING] CRIMINAL PROSECUTIONS.

POINT #2: THE PROSECUTOR ELICITED IMPROPER LAY-WITNESS OPINION TESTIMONY AS TO THE CONTENT OF THE SURVEILLANCE VIDEO.

POINT #3: [THE JUDGE] FAILED TO GIVE DISCRETE AND SPECIFIC INSTRUCTIONS ON IDENTIFICATION.

I.

Defendant's challenge to the authentication of the surveillance video and photograph was not made at trial. Therefore, on appeal he must establish that the admission of the exhibits was plain error. R. 2:10-2.

A trial court's evidentiary rulings are reviewed for abuse of discretion. State v. Maguire, 419 N.J. Super. 88, 135 (App. Div. 2011). We do not disturb such rulings in the absence of a clear error in judgment. State v. J.A.C., 210 N.J. 281, 295 (2012). We do not substitute our analysis for that of the trial court unless "the trial court's ruling is so wide of the mark that a manifest denial of justice resulted." Ibid. (quoting State v. Marrero, 148 N.J. 469, 484 (1997)).

It is well-settled that a videotape "qualifies as a writing" and "must be properly authenticated" to "be admissible in evidence . . . ." State v. Wilson,

135 N.J. 4, 17 (1994) (citing N.J.R.E. 901). Under N.J.R.E. 901, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must present evidence sufficient to support a finding that the item is what its proponent claims." This rule of evidence "does not require absolute certainty or conclusive proof." State v. Mays, 321 N.J. Super. 619, 628 (App. Div. 1999). "The proponent of the evidence is only required to make a [prima facie] showing of authenticity." Ibid. After such a showing is made, the evidence is admissible and the jury decides the ultimate question of authenticity. Ibid.

Authentication of a videotape is similar to the authentication of a photograph. State v. Loftin, 287 N.J. Super. 76, 98 (App. Div. 1996). "[T]estimony must establish that the videotape is an accurate reproduction of that which it purports to represent and the reproduction is of the scene at the time the incident took place." Ibid. (citing Wilson, 135 N.J. at 15). The photographer or videographer need not testify "because the ultimate object of an authentication is to establish its accuracy or correctness." Wilson, 135 N.J. at 14. Thus, "any person with the requisite knowledge of the facts represented in the photograph or videotape may authenticate it." Ibid.

A-4668-17

When the tape was shown at trial, the victims identified themselves and the location in which the incident occurred. They testified, contrary to defendant's assertion on appeal, that they were captured on film headed towards the restaurant immediately before the incident, shortly after 2:00 a.m. Clearly, they had the "requisite knowledge of the facts represented" in the video. Ibid.

Lemmerling in turn established a proper chain of custody by testifying regarding the steps he took to obtain the film, download it onto a flash drive, and from there onto a disc he knew would be admitted into evidence. Lemmerling said that the video was the same as the one he took from the surveillance camera and that he did nothing to modify or alter it. He similarly described the techniques he used to make the still photos from the surveillance tape. See Loftin, 287 N.J. Super. at 98-99. That testimony, which was not impeached, established that the video tape was in the same condition when presented to the jury as when originally removed from the surveillance camera. See State v. Mosner, 407 N.J. Super. 40, 62 (App. Div. 2009).

Gregus testified that during defendant's interview, he showed him the still photograph of the man wearing a hat walking on the heels of the victim. He obtained it from Lemmerling's case file, knowing Lemmerling had printed it out

15

from the surveillance camera footage, as Lemmerling also described. Defendant admitted it was a photograph of himself.

Thus, not only was there no abuse of discretion, as the evidence met the legal requirements for authentication and admission, a proper chain of custody was established. No miscarriage of justice resulted from the admission of the video and the photograph.

## II.

Defendant also contends his convictions must be reversed because a reasonable jury could not have found him guilty of the charges related to Rodriguez and Paz beyond a reasonable doubt, leading to his conclusion that the judge should have granted his Reyes motion for judgment of acquittal. See State v. Reyes, 50 N.J. 454, 458 (1967). We employ the same standard as did the trial judge when reviewing this decision—we determine whether the evidence presented at trial was sufficient to warrant a conviction. Ibid.

First-degree robbery occurs "if in the course of committing [a] theft the actor attempts to kill anyone, or purposely inflicts or attempts to inflict serious bodily injury, or is armed with, or uses or threatens the immediate use of a deadly weapon." N.J.S.A. 2C:15-1(b).

16

Second-degree robbery occurs when a person, "in the course of committing a theft," "(1) [i]nflicts bodily injury or uses force upon another"; or "(2) [t]hreatens another with or purposely puts him in fear of immediate bodily injury . . . ." N.J.S.A. 2C:15-1(a)(1), (2). An act is "'in the course of committing a theft' if it occurs in an attempt to commit theft . . . ." N.J.S.A. 2C:15-1(a).

Aggravated assault occurs when a person:

> (1) Attempts to cause serious bodily injury to another, or causes injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life recklessly causes such injury; or
>
> (2) Attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon; or
>
> (3) Recklessly causes bodily injury to another with a deadly weapon . . . .
>
> [N.J.S.A. 2C:12-1(b).]

Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ . . . ." N.J.S.A. 2C:11-1(b).

Simple assault occurs when an actor: "(1) [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another"; or "(2)

17

[n]egligently causes bodily injury to another with a deadly weapon"; or "(3) [a]ttempts by physical menace to put another in fear of imminent serious bodily injury." N.J.S.A. 2C:12-1(a).

The State's theory of the case was that defendant, who identified himself in the photograph taken from the surveillance video as the individual wearing a hat walking immediately behind the victims, was the person who accosted the group and injured Rodriguez. Rodriguez said he was punched by a man wearing a hat, who demanded money, went through his pockets, and struck him a second time when he attempted to assist Paz. Paz somehow broke her ankle in the panic of the moment when Rodriguez was accosted. Rodriguez said on the stand that he believed the person with the hat was the one that hit him because the other individual involved in the robbery chased Ramos-Sanchez when she fled.

Thus, a reasonable jury could have found defendant struck Rodriguez while committing a theft causing him serious bodily injury, including the scar. The cases upon which defendant relies to challenge the jury's conclusion that the scar constituted a "serious bodily injury" are distinguishable. In State v. Green, 318 N.J. Super. 361, 368, 371 (App. Div. 1999), the court noted that a one-and-one-half-inch scar on the victim's palm did not constitute a serious bodily injury. In State v. Williams, 197 N.J. Super. 127, 132 (App. Div. 1984),

18

the victim had a "barely perceptible mark" on her wrist. These are significantly different from Rodriguez's scar, which ran some two to three inches, and was on his forehead. See State v. Sloane, 111 N.J. 293, 298 (1988) ("The legislative definition of 'serious bodily injury' requires a jury finding of 'bodily injury which . . . causes serious, permanent disfigurement . . . .'" (quoting N.J.S.A. 2C:11-1(b))). The jury's findings that defendant was guilty, as to Rodriguez, of first-degree robbery and the merged offense of second-degree aggravated assault, were supported by the proofs in the record.

As to Paz, although she could not specify what caused her to fall and break her ankle, it was reasonable for the jury to have found that she interpreted defendant's conduct as threatening the use of force upon her. Witnessing the assailant striking her companion and demanding money would certainly cause her to fear that she was next. Therefore, a reasonable jury could have found that defendant "purposely put[] [her] in fear of immediate bodily injury[,]" in order to accomplish a theft, justifying the second-degree robbery conviction, and the simple assault charge as well. There is no merit to either challenge.

III.

"Prosecutors 'are afforded considerable leeway in making opening statements and summations[,]'" State v. Echols, 199 N.J. 344, 359-60 (2009)

(quoting State v. Williams, 113 N.J. 393, 447 (1988)), and "are expected to make vigorous and forceful closing arguments to juries[,]" State v. Frost, 158 N.J. 76, 82 (1999). Nonetheless, a prosecutor's opening statement and "summation [are] limited to commenting upon the evidence and the reasonable inferences to be drawn therefrom." State v. Swint, 328 N.J. Super. 236, 261 (App. Div. 2000).

Because defense counsel did not object to the disputed comments at trial, "the asserted error must be evaluated by the plain-error standard, namely whether the misconduct was so egregious in the context of the [opening statement and] summation as a whole as to deprive defendant of a fair trial." State v. Tilghman, 345 N.J. Super. 571, 575 (App. Div. 2001).

Defendant asserts the State "misled the jury" during opening statements by claiming that "'all' three victims would uniformly testify" that two assailants approached them from behind. They did not—the victims did not agree on the number of attackers, or whether they were approached from behind or the front.

The prosecutor's statement in opening, however, was merely an outline of what he anticipated would be the witnesses' testimony. See Szczecina v. P.V. Holding Corp., 414 N.J. Super. 173, 177-78 (App. Div. 2010) ("The fundamental purpose of opening statements is 'to do no more than inform the jury in a general way of the nature of the action and the basic factual hypothesis projected, so that

20

they may be better prepared to understand the evidence." (emphasis added) (quoting Amaru v. Stratton, 209 N.J. Super. 1, 15 (App. Div. 1985))).

Rodriguez and Ramos both initially reported that two assailants approached them from behind while Paz testified that they were approached from the front, and she initially reported that three or four assailants attacked the group. The prosecutor's obviously mistaken factual argument was neither misconduct nor prejudicial. The discrepancy was inconsequential.

Defendant also challenges for the first time the State's argument in summation that it was defendant who rummaged through Rodriguez's pockets. The State based its argument on the fact the surveillance video showed the man in the cap reaching for an object in his pocket as he walked. Defendant now claims this argument was prejudicial. It was not because these were fair inferences from the video. See State v. Williams, ___ N.J. ___, ___ (2021) (slip op. at 17) (quoting State v. Feaster, 156 N.J. 1, 58-59 (1998)). Additionally, the judge twice instructed the jury that the arguments of counsel are not evidence. The "reasonable inference[]" was not prejudicial. See ibid.

IV.

Defendant further argues that the jury charge was itself erroneous. Alleged errors in jury charges are considered "in light of 'the totality of the entire

charge, not in isolation.'" State v. Burns, 192 N.J. 312, 341 (2007) (quoting State v. Chapland, 187 N.J. 275, 289 (2006)). "[B]ecause clear and correct jury instructions are fundamental to a fair trial, erroneous instructions in a criminal case are 'poor candidates for rehabilitation under the plain error theory.'" State v. Adams, 194 N.J. 186, 207 (2008) (quoting State v. Jordan, 147 N.J. 409, 422 (1997)).

Courts consider the following factors in reviewing an alleged error in a jury charge:

> (1) the nature of the error and its materiality to the jury's deliberations; (2) the strength of the evidence against the defendant; (3) whether the potential for prejudice was exacerbated or diminished by the arguments of counsel; (4) whether any questions from the jury revealed a need for clarification; and (5) the significance to be given to the absence of an objection to the charge at trial.
>
> [State v. Docaj, 407 N.J. Super. 352, 365-66 (App. Div. 2009) (citations omitted).]

Here, the indictment charged defendant with the first-degree robbery (counts one, two, and three) of each victim. The court, after conferring with counsel, initially omitted the "threatens another with or purposely puts him in fear of immediate bodily injury" language from the jury charge and the verdict

22

sheet. Given the facts the State presented at trial, it is not surprising that the jury initially had questions during deliberations.

Although defense counsel strenuously argued against the judge's decision to charge threat of force, it is ultimately a judge's responsibility to convey the law correctly. As the judge observed, fulfilling that responsibility required that he supplement the charge because the facts developed in the trial came within the greater scope of the robbery statute. Thus, the court's recharge on the jury was proper, as was the corresponding correction to the verdict sheet.

The judge's decision to charge did not invade the grand jury process. As we said in Parsons, it is not enough to merely recite the elements of the offense. 270 N.J. Super. at 224. "If a question discloses that the jury needs specific help understanding issues it must decide, particularly issues related to the elements of the crime charged, and that help is not given," failure to do so is error. Id. at 224-25.

If we assume for the sake of argument only that the judge's decision to charge the jury regarding the threat of force was effectively an amendment to the indictment, such amendments are permitted under Rule 3:7-4 so long as defendant had adequate notice of the allegations and would not be prejudiced thereby. See State v. Dorn, 233 N.J. 81, 96 (2018).

The victims' descriptions of the robbery and their injuries certainly put defendant on notice, separate from the language of the indictment, both pre- and post-trial. The changes the judge made did not charge a different offense. See R. 3:7-4. Defendant had sufficient notice and was not prejudiced.

Furthermore, the judge's response to the jury's questions was reasonable. During the first day of deliberations, the jury requested several readbacks. The following day, a juror was excused for personal reasons requiring the court to instruct the jury to begin anew. It was only during that second day of deliberations with the newly constituted panel that the jury began to ask questions as to whether the word "force" requires physical contact.

In discussing the issue with the attorneys, the judge acknowledged that the threat of force is a statutory element and that with both parties' assent he did not charge it because of defense counsels' observation that the language was not in the indictment. The jury then posed more questions regarding the meaning of the word "force."

Specifically, the jury asked the following: "[i]f someone is injured during the course of a crime, is the defendant responsible?" The court and counsel conferred regarding possible meanings while the jury was excused for lunch. When they returned, the jury asked this additional question: "[i]s the threat of

24

force the same as the use of force to classify a theft as a robbery?" It was at that juncture that the judge realized his failure to instruct the jury on the threat of force had left them with an analytical void that was impeding deliberations. Based on the questions, he made the decision that regardless of counsels' position, he had to fulfill his responsibility to charge the jury correctly to ensure deliberations were just. See Parsons, 270 N.J. Super. at 224-25.

Defense counsel further objected to the recharge on the basis that their summations did not address the threat of force. But when asked if they wanted the opportunity to again sum up to the jury, the attorneys declined. Defense counsel did request a recharge to the jury that a conviction could only be based on the State proving every element of the offenses beyond a reasonable doubt. The judge did so.

The judge's decision to fully charge the jury to mirror the robbery statute elements that were relevant to the proofs developed at trial fulfilled the court's "primary obligation" to charge correctly, even over a defense objection. See State v. Garron, 177 N.J. 147, 180 (2003), cert. denied, 540 U.S. 1160 (2004). No prejudice inured to defendant from the recharge. A judge is expected to correct perceived errors including "erroneous, misleading, or confusing instruction[s] . . . ." State v. McKinney, 223 N.J. 475, 497 (2015).

In any event, defendant's defense at trial was reasonable doubt. It was based upon inconsistencies in the victims' statements, intended to attack the certainty that the two men filmed following closely on the heels of the victims moments before they were assaulted, dressed in the same garb as described by one of the victims, were guilty of robbery. Counsel argued that defendant was not guilty based on identity. Nothing about that defense would have changed even if the judge had charged threat of force initially. Since no prejudice inured to defendant from the charge, the judge did not err by fulfilling his primary obligation to correctly charge the jury.

V.

Defendant finally asserts in his counseled brief that his sentence was manifestly excessive. We do not agree.

"[Our] review of sentencing decisions is relatively narrow and is governed by an abuse of discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). We consider whether the trial court has made findings of fact grounded in "reasonably credible evidence"; whether the factfinder applied "correct legal principles in exercising . . . discretion"; and whether "application of the facts to the law [has resulted in] such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363-64 (1984).

26

We review a trial judge's findings as to aggravating and mitigating factors to determine whether the factors are based on competent, credible evidence in the record. Id. at 363. "To facilitate meaningful appellate review, trial judges must explain how they arrived at a particular sentence." State v. Case, 220 N.J. 49, 65 (2014) (citing State v. Fuentes, 217 N.J. 57, 74 (2014); R. 3:21-4(g) (requiring the judge to state reasons for imposing the sentence, including the factual basis for finding aggravating or mitigating factors affecting the sentence)).

The judge's discussion of defendant's significant criminal record justified the weight he accorded aggravating factors three, six, and nine. Nothing in the record supports the mitigating factors defendant now proposes should have been found by the judge: one, that his "conduct neither caused nor threatened serious harm[,]" two, that he "did not contemplate [his] conduct would cause or threaten serious harm[,]" and eleven, that imprisonment "would entail excessive hardship to [himself] or [his] dependents . . . ." N.J.S.A. 2C:44-1(1), (2), (11). Given defendant's extensive criminal history and the lack of any mitigating evidence, the judge did not abuse his discretion in sentencing defendant. It was not a clear error of judgment which shocks our conscience. See Roth, 95 N.J. at 364.

## VI.

Defendant also filed a pro se brief. We consider the issues raised that are not addressed in this opinion to be so lacking in merit as to not warrant discussion in a written decision. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION