**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4934-18

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KEVIN I. TUCKER,
a/k/a KEVIN TUCKER,

     Defendant-Appellant.

_____

Argued November 1, 2021 – Decided December 9, 2021

Before Judges Sabatino, Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-01-0012 and 16-02-0218.

Melanie K. Dellplain, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Melanie K. Dellplain, of counsel and on the briefs).

Erin M. Campbell, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Erin M. Campbell, on the brief).

PER CURIAM

Defendant Kevin I. Tucker, who waived a jury, was found guilty of second-degree robbery, N.J.S.A. 2C:15-1(b), after a May 2017 bench trial. The court imposed a nine-year custodial sentence, subject to an eighty-five percent parole ineligibility period under the No Early Release Act, N.J.S.A. 2C:43-7.2 ("NERA").

Defendant appeals his conviction, arguing the trial court (1) unfairly allowed the State to amend the charges against him on the first day of trial; (2) erred in admitting an incriminating and unrecorded statement he made while in police custody; and (3) imposed an excessive sentence. As explained in this opinion, we agree with the first argument and remand this matter to the trial court for further proceedings and resentencing. We reject defendant's second and third arguments.

I.

The State's proofs showed the victim had been on the platform of the Liberty State Park light rail station in Jersey City on July 8, 2015 when he was attacked by a robber, who seemed to be trying to take his cell phone. The victim was either pushed or punched, and he swiftly fell onto the railroad tracks. There

2

was no train immediately coming and the victim was able to climb back safely onto the platform.

The victim reported the attempted robbery to the police. Meanwhile, the robber fled the scene after attempting to board a train that arrived about a minute later. The robber was seen with a black bag, a yellow cord around his ankle, and sneakers.

The victim's descent onto the tracks and the subsequent actions of his attacker on the platform were recorded on video surveillance footage,[1] although the physical altercation itself was not captured on the video. After being shown the footage by the police, the victim initially identified a different person as his assailant from police photos, but then realized he was mistaken because that person lacked a distinctive tattoo on his arm, which defendant has. The victim thereafter identified defendant as his assailant.

Defendant was brought into the New Jersey Transit Police Department one day after the alleged incident occurred. He was taken to an interview room for questioning and given Miranda[2] warnings, but invoked his right to counsel. He was released later that day.

---

[1]  We have reviewed the video footage and it is consistent with the State's case.

[2]  Miranda v. Arizona, 384 U.S. 436 (1966)

Police continued their investigation, seeking to confirm the identity of the robber depicted in the station video footage and to corroborate the victim's identification of defendant as the robber. Officers interviewed a local drugstore owner who identified the robber as being the same person who recently had been lingering about his store, as shown on the store's private surveillance video.[3] The drugstore owner later identified defendant as the robber in a police photo array conducted at the New Jersey Transit Police Department.

Defendant was arrested in Union City twenty-one days after the incident. He was found in possession of the same black bag, yellow cord, and sneakers. He was readministered Miranda warnings and invoked his right to remain silent, refusing to provide a statement. Nonetheless, defendant did not remain silent while police drove him to the New Jersey Transit Police District Command station in Hoboken. Even after arriving at the station, defendant repeatedly spoke up and demanded to know the specifics of the allegations against him, including the alleged time and place of the offense. In response, one of the detectives asked defendant again if he would like to give a sworn statement, but he refused.

---

[3] Defendant makes no argument to us that the identifications were unduly suggestive.

Upon arriving at the New Jersey Transit police facility, the police again readministered <u>Miranda</u> warnings to defendant. They presented a form to defendant acknowledging his <u>Miranda</u> rights had been read to him, but he refused to sign it. Despite his refusal, defendant denied his involvement in any robbery and questioned the validity of the arrest.

In response to defendant's persistent demands for clarification, Transit Police Detective Laquan Hudson showed him a copy of the criminal complaint, which alleged the victim had been injured. Without any inquiry at that point from the officer, defendant blurted out, "That dude didn't get hurt."

The police then interviewed defendant in depth and he made additional self-incriminating statements. After a hearing held before trial, the court granted suppression of those subsequent statements, but did not suppress defendant's spontaneous utterance about not hurting the "dude."[4]

The text of the indictment charged defendant with "serious bodily injury," indicative of a first-degree robbery charge. However, the heading on the

---

[4] In order to elevate a robbery from second-degree to first-degree severity, a defendant must inflict or attempt to inflict upon the victim "severe" bodily injury. N.J.S.A. 2C:15-1(b). In this case, the victim was bruised but apparently had no fractures, and he was treated at the hospital for only minor injuries. That said, we do not minimize the peril that the victim risked by tumbling onto an active rail track only a minute or so before a train approached.

A-4934-18

indictment read "second-degree." The voting slip of the grand jurors was consistent with a second-degree charge, as it used the abbreviation "BI" (signifying only Bodily Injury) and not "SBI" (signifying Severe Bodily Injury).

Up until the first day of trial, both counsel and the trial court evidently had believed that defendant was facing a second-degree robbery charge. Given that shared assumption, the State's pretrial plea offer had been to recommend a sentence of no greater than five years, which defendant did not accept. However, on the first day of trial, the State moved to amend the charge to a first-degree robbery. The State also raised its plea offer from a five-year term to an eight-year term, subject to NERA.

Over defense counsel's objection, the trial court permitted the late amendment of the indictment. Defense counsel then moved for an adjournment of the trial to enable her to prepare more fully, in light of her client's more severe first-degree exposure. Defendant spoke up before the court and, against his counsel's wishes, urged the court to not adjourn the trial. The court denied the adjournment and the bench trial partially went forward for two days. Defendant did not accept the State's revised eight-year plea offer.

Meanwhile, defense counsel filed an emergent application with this court to stay the trial and reverse the adjournment denial. After briefing, a panel of

A-4934-18

this court granted emergent relief in an order on May 9, 2017. The panel summarily ruled that the indictment's last-minute amendment justified giving the defense more time to prepare, and that the trial court had misapplied its discretion in denying the adjournment. The panel issued a clarifying order on May 15. During the interim, the trial was suspended. The trial was not resumed until May 17, fourteen days after it had been halted.[5]

After hearing the evidence, the judge issued an oral opinion finding defendant guilty of second-degree, but not first-degree, robbery. The judge denied the State's motion for an extended term sentence. The nine-year NERA sentence the court imposed was one year longer than the State's eight-year final plea offer.

On appeal, defendant presents the following arguments in his brief:

POINT I:

THE ROBBERY CHARGE WAS IMPROPERLY AMENDED FROM SECOND DEGREE TO FIRST DEGREE ON THE FIRST DAY OF TRIAL, IN VIOLATION OF [DEFENDANT]'S CONSTITUTIONAL RIGHTS TO A GRAND JURY AND DUE PROCESS.

---

[5] Defendant does not argue, in retrospect, that the fourteen-day hiatus was insufficient.

A-4934-18

POINT II:

[DEFENDANT]'S INCULPATORY STATEMENT TO THE POLICE SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE IMPROPERLY INTERROGATED HIM AFTER HE HAD INVOKED HIS RIGHTS TO REMAIN SILENT AND TO COUNSEL AND THE STATEMENT WAS NOT RECORDED PURSUANT TO RULE 3:17.

A. [DEFENDANT]'S STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE HE INVOKED HIS RIGHT TO REMAIN SILENT THREE TIMES, AND THE POLICE IMPROPERLY INTERROGATED HIM IN VIOLATION OF THIS RIGHT.

1. [DEFENDANT] NEVER WAIVED HIS RIGHT TO REMAIN SILENT.

2. THE POLICE IMPROPERLY ENGAGED [DEFENDANT] IN THE FUNCTIONAL EQUIVALENT OF INTERROGATION.

B. [DEFENDANT]'S STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE INTERROGATED HIM AFTER HE HAD INVOKED HIS RIGHT TO COUNSEL.

C. [DEFENDANT]'S STATEMENT SHOULD HAVE BEEN SUPPRESSED BECAUSE THE POLICE DID NOT ELECTRONICALLY RECORD IT, THEREBY VIOLATING RULE 3:17.

D. THE MOTION COURT'S ADMISSION OF [DEFENDANT]'S STATEMENT WARRANTS REVERSAL OF [DEFENDANT]'S CONVICTION AS

IT WAS CLEARLY CAPABLE OF PRODUCING AN UNJUST RESULT, PURSUANT TO RULE 2:10-2.

POINT III:

[DEFENDANT]'S SENTENCE IS EXCESSIVE BECAUSE THE COURT IMPROPERLY FOUND AGGRAVATING FACTOR TWO AND REJECTED MITIGATING FACTORS ONE AND SIX BASED ON ASSUMPTIONS UNFOUNDED IN THE RECORD, AND BECAUSE IT DID NOT PROPERLY CONSIDER EVIDENCE SUPPORTING MITIGATING FACTORS TWO, FOUR, AND SIX.

As noted in our introduction, we agree with defendant's first argument but not his other points of claimed error.

## II.

It is fundamental to our system of criminal justice that a defendant be provided with fair notice of the charges against him in a prosecution, and of the sentence that he may face if he is convicted. Under our State Constitution, "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury . . . ." N.J. Const. Art. I, ¶8. The indictment must "inform the defendant of the offense charged against him, so that he may adequately prepare his defense." State v. LeFurge, 101 N.J. 404, 415 (1986) (quoting State v. Lefante, 12 N.J. 505, 509 (1953)). The indictment must be "sufficiently specific" to both "enable the defendant to avoid a subsequent

prosecution for the same offense" and "preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." Ibid. (quoting State v. Boratto, 80 N.J. 506, 519 (1979)); accord State v. Dorn, 233 N.J. 81, 93 (2018).

Subject to these principles of fair notice, Rule 3:7-4 provides a limited avenue for an indictment or criminal accusation to be amended before trial to "correct an error in the form of the description of the crime intended to be charged." R. 3:7-4. However, such a correction is permissible only if "the amendment does not charge another or a different offense from that alleged and the defendant will not be prejudiced thereby . . . [.]" Ibid.

These standards have been enforced by our courts to assure that criminal defendants are not prejudiced by indictment amendments that expose them to offenses of a higher degree and potentially more severe punishment. In State v. Catlow, 206 N.J. Super. 186 (App. Div. 1985), we ruled that an indictment charging, among other things, the offense of robbery without specifying the degree, violated defendant's State constitutional right to indictment or presentment. Id. at 195. Specifically, this court found the "determination of the degree of the crime" to be an "essential element of the grand jury function[,]" and where an indictment fails to indicate whether this function has been carried

out, a defendant's rights have been denied.  Ibid.  This court rejected the State's characterization of the distinction between first and second-degree robbery to be "merely one of grading," finding it "unrealistic in light of the importance of such distinction to a defendant."  Ibid.

Citing Catlow, the Supreme Court subsequently held in Dorn that the trial court had improperly prejudiced a defendant in a drug case by allowing a prosecutor to amend the indictment to reflect a charge for a second-degree, rather than a third-degree, offense on the day before trial.  Dorn, 233 N.J. at 97-98.  Contrary to the State's and trial court's rationale that the amendment addressed a mere "administrative error" under Rule 3:7-4, the Supreme Court, quoting Catlow, reiterated that the degree of a charged crime goes to "an essential element of the offense," and that amendments thereof are therefore "substantive[.]"  Ibid.

In the present case, as in Dorn, defendant has presented sufficient grounds to obtain relief stemming from the indictment's brink-of-trial amendment to charge him with first-degree robbery.  Although the body of the indictment does contain language alleging defendant inflicted or attempted to inflict "serious" bodily injury upon the victim—which would be consistent with a first-degree gradation—the heading of the indictment reads "CHARGE(S): ROBBERY (NJS

11

2C:15-1) <u>2ND Degree</u>[.]" (Emphasis added). As we have already noted, the voting slip of the grand jury also reflected the return of a second-degree charge.

It appears the court and trial counsel all acted as if the State was seeking a second-degree conviction, until the prosecutor raised the error on the day before trial. At the same time, the prosecutor stiffened the plea offer from a recommended five-year NERA sentence to an eight-year NERA sentence.

The pretrial memorandum dated March 17, 2017, which defendant and his attorney both signed, clearly stated that defendant was being charged with second-degree robbery, exposing him to a maximum jail term of ten years, with the exception of a possible discretionary extended term of ten additional years. <u>See</u> N.J.S.A. 2C:43-6(a)(1) – (2); N.J.S.A. 2C:44-3. By contrast, first-degree robbery is punishable with a sentence ranging from ten to twenty years, with a possible exposure of up to a life sentence under the extended-term statute. N.J.S.A. 2C:43-7(a)(2) – (3); N.J.S.A. 2C:44-3. Hence, the last-minute revision of the indictment greatly increased defendant's exposure and the risks of rejecting a plea offer.

The State essentially contends that the amendment caused no actual harm to defendant because he was only found guilty of second-degree robbery, and that he received a sentence within the prescribed five-to-ten-year range for such

a second-degree offense, with no extended term.  But that argument misses an important facet of the sequence of events.

Had defendant known when the State issued its five-year plea offer in March 2017 that his maximum sentencing exposure was actually twenty years, not ten years (or an extended term of up to life in prison rather than twenty years), that knowledge could have materially affected his consideration of the State's offer.  The misinformation could easily have made a difference in the defendant's decision-making, and in the advice he might have received from his attorney at that time about whether to take the offer and not risk going to trial. The fact that defendant was ultimately not found guilty of first-degree robbery months later does not make up for the lost opportunity.  Before accepting or rejecting the five-year offer, defendant was entitled to know that he was facing far more severe consequences and a much longer potential prison term.[6]

Because of this manifest prejudice, defendant's sentence must be vacated and the matter remanded to the trial court for further proceedings.  As an appropriate remedy, the State shall be required to renew its original plea offer

---

[6] We take this opportunity to underscore the importance of accuracy and careful proofreading of charging documents and of associated pretrial orders that set forth a defendant's actual sentencing exposure.

of a recommended five-year NERA sentence.  If defendant accepts that offer, he shall be resentenced, with the recommended sentence capped by agreement at five years.

On the other hand, if for some reason (not readily apparent here) defendant rejects the five-year plea offer, his conviction of second-degree robbery shall remain intact, as defendant has not argued or shown that he was deprived of a fair trial.[7]  The matter would then proceed to a resentencing, at which the court would not be constrained to cap the sentence at five years but could impose a sentence below the nine years that was originally specified.

In either scenario, the presentence report from 2017 shall be updated, and defendant may argue to the court in mitigation any recent conduct or other developments in favor of leniency.  See State v. Randolph, 210 N.J. 330, 354 (2012).

The remedy we have fashioned is consistent with Dorn and Catlow.  In each of those cases the late amendment of or lack of clarity in the grading of the offense charged and reflected in the indictment was disapproved on appeal, but neither defendant was granted a new trial.  Instead, the judgments of conviction

---

[7]  See our analysis of the self-incrimination issue in Part III, infra.

A-4934-18

were revised and the cases remanded for resentencing.  See Dorn, 233 N.J. at 98; Catlow, 206 N.J. Super. at 195-96.

III.

We reject defendant's argument that the trial court should have suppressed his statement to the police, made while he was in custody at the Hoboken facility, about the victim not being "hurt."

In reviewing this argument, we give substantial deference to the factual findings made by the trial court at the suppression hearing, including its determination that the testifying officer, Detective Hudson, was "very credible." We must defer to such factual findings "so long as those findings are supported by sufficient evidence in the record." State v. Hubbard, 222 N.J. 249, 262 (2015) (internal citations omitted); see also State v. Nelson, 237 N.J. 540, 551 (2019) (reinforcing that principle).  As part of that deference, we particularly must respect the trial judge's assessments of credibility, given the judge's ability to have made "observations of the character and demeanor of witnesses and common human experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999).  That said, we review de novo the trial judge's conclusions of law.  See State v. Hinton, 216 N.J. 211, 228 (2013) (internal citations omitted).

15

It is undisputed that defendant was in custody at the time he was with Detective Hudson and the other officers at the Hoboken transfer station. It is also unrefuted that defendant had been given <u>Miranda</u> warnings on two occasions before and after his arrest in Union City, and that the police had readministered those warnings when they arrived at the Hoboken facility. Further, it is agreed that defendant invoked his constitutional right upon being Mirandized when he was initially brought in for questioning and when he was arrested. However, as the motion judge found, defendant continued to proclaim to the police that he had not taken part in a robbery and insisted on being informed of the time and location of the alleged offense. As Detective Hudson testified, those repeated outbursts prompted him to show defendant the written complaint.

It is also undisputed that defendant's assertion, "That dude didn't get hurt," was self-incriminating, insofar as it evidenced defendant's knowledge of the encounter and tended to show he was present at the scene and involved in the incident. In fact, the State presented the statement as part of its proofs at trial.

Defendant contends that his statement should have been suppressed for two reasons: (1) the discussion with Detective Hudson was not recorded, in alleged violation of <u>Rule</u> 3:17; and (2) regardless of any Rule violation, the

16

statement was not spontaneous and was induced during an improper police interrogation. We reject these contentions.

Rule 3:17(a) prescribes that, unless an exception applies, all custodial interrogations conducted in a place of detention must be electronically recorded when the person being interrogated is charged with one or more offenses enumerated in the Rule. Robbery is one of the enumerated offenses. Ibid. Apparently, the New Jersey Transit Police Department's transfer facility was not equipped with such electronic recording equipment, and the police explained they had not taken defendant there with the expectation of interviewing him because he had invoked his right to remain silent. However, there is no evidence, nor did the motion judge make a finding, that the Transit police officers deliberately took defendant to the Hoboken facility to evade Rule 3:17's recording obligations.

Rule 3:17(b)(ii) provides in relevant part that "(b) Electronic recordation pursuant to paragraph (a) must occur unless: . . . (ii) a spontaneous statement is made outside the course of an interrogation." This exception to the recording requirement clearly applies here. Finding Detective Hudson's narrative of the events "very credible," the motion judge expressly determined that defendant's utterance about the victim not being hurt was indeed "spontaneous" and not

A-4934-18

elicited improperly by the detective. That finding is supported by credible evidence and we will not cast it aside. Hence, there was no obligation for the police to record this particular interaction.

This leads us to consider whether the interaction between Detective Hudson and defendant violated case law governing custodial police interrogations. We concur with the trial court that it did not, with respect to defendant's spontaneous utterance.[8]

As a general proposition, a police interrogation is defined as "express questioning, but also … any words or actions … that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (emphasis added); see also State v. Hubbard, 222 N.J. 249, 267 (2015) (quoting Innis). Under the Fifth Amendment, "[i]n the absence of interrogation, a spontaneous statement is admissible in evidence regardless of the failure to provide Miranda warnings." State v. Marks, 201 N.J. Super. 514, 529 (App. Div. 1985) (emphasis added).

Defendant argues his improvident comment to Detective Hudson was the product of an "interrogation." But there was no testimony that the detective or

---

[8] Although the State has not cross-appealed the court's suppression of the additional statements that defendant made after his remark and the police resumed questioning him, we concur with the court's differentiation of the two.

any other officer posed questions to defendant while he was being held at the Hoboken facility. Instead, defendant himself initiated communication, by repeatedly demanding specific details about the robbery he was being accused of committing.

Based on the circumstances presented here, Detective Hudson did not violate defendant's constitutional right to remain silent by presenting him with a copy of the criminal complaint. Our case law has recognized that where a defendant asks why he or she is being detained and an officer responds, our law "would not hold the officers accountable for such an unforeseeable result" as a "blurted out" incriminating statement. State v. Wright, 444 N.J. Super. 347, 366-67 (App. Div. 2016).

In fact, the Supreme Court has recognized that a suspect who has been arrested has a right to be informed that a criminal complaint has been filed or an arrest warrant has been issued against him, as well as the nature of the charges. See, e.g., State v. Vincenty, 237 N.J. 122, 132-34 (2019); State v. A.G.D., 178 N.J. 56, 68 (2003). There is no evidence here that the detective tried to weave such details into any "accusatory questions." Vincenty, 237 N.J. at 134. Instead, the detective simply handed the defendant, who had just received renewed

<u>Miranda</u> warnings minutes earlier, a copy of the criminal complaint, which contained the date and location information defendant had been demanding.[9]

In sum, we affirm the trial court's sound denial of the suppression motion. The statement was properly admitted at trial.

## IV.

Little needs to be said about defendant's sentence, given that we are remanding the case for resentencing because of the prejudicial late amendment of the indictment we discussed in Part II. It will suffice to note that we discern no manifest error by the trial court in identifying and weighing the pertinent sentencing factors as they existed at the time. <u>State v. Fuentes</u>, 217 N.J. 57 (2014). The court took into account defendant's prior criminal record but did not accord it undue weight and, in fact, did not impose an extended prison term. As we have already noted, defendant will be entitled to an updated presentence report and can proffer additional mitigating information on remand.

---

[9] We have not been asked in this case to address what, if any standard procedures should be followed when a police officer hands an arrested suspect a copy of written charges. In any event, we are satisfied in this case the detective acted reasonably in doing so, given the surrounding context.

A-4934-18

Affirmed in part and remanded in part, consistent with the terms of this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21