**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1088-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JONATHAN MORGAN, a/k/a
JONATHAN D. MORGAN, and
JOHNATHAN D. MORGAN,

    Defendant-Appellant.

_____

Submitted October 30, 2024 – Decided December 12, 2024

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 11-04-0373.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Robert Carter Pierce, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Meredith L. Balo, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Jonathan D. Morgan was convicted by a jury of first-degree felony murder and robbery of taxicab driver, Isidro Leonardo. In a petition for post-conviction relief (PCR), he alleged trial counsel was ineffective for failing to object to an alleged constructive amendment of a conspiracy count for which defendant was acquitted and failing to challenge the admission of N.J.R.E. 404(b) evidence of an earlier attempted robbery of a different victim. After conducting an evidentiary hearing on several issues, the PCR judge denied defendant's petition. In reviewing the contentions set forth in defendant's appeal, and considering the applicable principles of law, we affirm substantially for the reasons set forth in the well-reasoned written opinion of Judge Lisa Miralles Walsh.

I.

In April 2011, a grand jury returned an indictment charging defendant and co-defendant Wallace Parrish[1] with first-degree murder of Leonardo, N.J.S.A. 2C:11-3(a)(1); first-degree robbery of Leonardo, N.J.S.A. 2C:15-1; first-degree felony murder of Leonardo, N.J.S.A. 2C:11-3(a)(3); second-degree conspiracy to commit robbery of an unnamed victim, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-

---

[1] Parrish was tried separately and convicted on all counts except first-degree murder and entered into an agreement with the prosecutor to testify against defendant in exchange for the State's recommending a lesser sentence.

A-1088-22

1; second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a)(1).

In March 2015, a jury found defendant guilty of the robbery of Leonardo, specifically "threaten[ing] [Leonardo] and/or purposely put[ting] [Leonardo] in fear of immediate bodily injury" during the robbery, and the felony murder of Leonardo as a non-slayer participant. The jury found defendant not guilty of the remaining offenses.

We described the relevant trial evidence in our prior opinion on direct appeal, in which we affirmed defendant's conviction and sentence to forty-five years' incarceration subject to No Early Release Act, N.J.S.A. 2C:43-7.2. See State v. Morgan, No. A-0390-15 (App. Div. July 24, 2018) (slip op. at 27-28). We incorporate those detailed facts here and summarize only the following facts and procedural history, derived from our prior opinion and the trial and PCR records, pertinent to the PCR claims.

On September 28, 2010, United Taxi received a call from a male requesting service at a specific location in Plainfield. Id. at 2. Taxicab driver Jose Gomez responded, but was met by a male, appearing to be alone, who pulled a gun while entering the vehicle, after which Gomez was able to drive

away before the man could get into the car.  Id. at 2-3.

That same day, another caller to United Taxi requested service at a different location in Plainfield, and taxicab driver Leonardo responded.  Id. at 3.  When Gomez reported his earlier incident and dispatch could not make contact with Leonardo, Gomez proceeded to that location where, along with responding police, he discovered Leonardo in the cab bleeding from a fatal gunshot wound to the head.  Ibid.

The police investigation linked the calls to United Taxi to defendant and Parrish, and a palm print from Leonardo's cab matched Parrish.  Ibid.  At trial, Parrish testified to agreeing with defendant to commit robbery and deciding to target cabs.  Id. at 5.  He testified they made the calls together and remained together, although he clarified that the two agreed Parrish alone would commit the robbery, and they would split the money obtained from the driver. When the Gomez robbery attempt failed, the two waited together at the next requested location.  Parrish explained he "[o]pened the [cab's] back door[,] [defendant] slid in first, and [Parrish] slid in after him."  After disputing which one would actually rob Leonardo, Parrish got out of the car, overheard a "little bit" of what defendant said, including demands for Leonardo's money, before hearing a gunshot and seeing a "flash" inside the vehicle.  Id. at 6.

4

During a charge conference summarized on the record, the trial court confirmed with both parties its understanding that count four charging conspiracy, without a named victim, applied solely to the earlier incident involving Gomez. As defendant did not match the description of Gomez's assailant, defense counsel maintained throughout trial that Parrish acted alone both during the thwarted robbery of Gomez and the robbery and shooting of Leonardo.

On direct appeal of his conviction, defendant claimed he did not receive a fair trial because the court failed to sua sponte instruct the jury regarding the statutory affirmative defense to non-slayer participant felony murder and the prosecutor made inflammatory remarks requiring reversal. Id. at 7. He further argued the disparity in sentencing with Parrish. Id. at 7-8. We rejected these claims and affirmed. Id. at 28.

Defendant thereafter filed a pro se PCR petition in May 2019, and PCR counsel filed an amended petition in June. Collectively, defendant raised claims that trial counsel failed to: (1) investigate or present alibi witnesses; (2) inform him of his right to testify at trial; (3) object to constructive amendment of count four conspiracy to apply to Gomez in an earlier attempted robbery; and (4) object

A-1088-22

to "other crimes evidence" pertaining to the Gomez robbery attempt. After an evidentiary hearing, Judge Walsh denied all defendant's PCR claims.

At the PCR hearing, defendant's trial counsel testified and explained he did not consider the clarification—that the conspiracy count applied to Gomez—to be a constructive amendment of the indictment. He further described that his trial strategy involved highlighting defendant's non-involvement in the Gomez incident to prompt a similar conclusion that defendant was not involved in the Leonardo robbery. He explained that "[he] knew [defendant] was going to be acquitted of [the conspiracy to commit the Gomez robbery]," and his "argument would be that [defendant] didn't do the other robbery" of Leonardo. Counsel deemed the lack of proof against defendant regarding the earlier botched robbery as creating an opportunity that would benefit defendant as to the charges related to the robbery and shooting of Leonardo.

Counsel agreed the attempted Gomez robbery constituted "another bad act," but explained it pertained to a "course of conduct" that same day and was "not being used as 404[(b)] evidence." He again explained he did not make a motion to exclude this evidence as part of an overall "strategy," which counsel believed almost succeeded as defendant was acquitted of the conspiracy charge and other offenses that exposed defendant, if convicted, to a life sentence.

6

Counsel characterized his tactical approach to the Gomez incident as "good trial strategy," citing the "weak case against [defendant for] the other robbery" and reiterating his rationale that the jury would conclude "[t]he person who tried to rob the first guy . . . was the person who actually killed the second guy."

Judge Walsh recounted the testimony in detail and denied defendant's claims. The judge first found there was no constructive amendment. She considered the record of the grand jury proceedings and determined the grand jury heard and considered evidence of the agreement between Parrish and defendant to commit robbery of a cab driver and the incident involving Gomez. The judge found, "the grand jury in fact heard about the attempted robbery of Gomez. Additionally, the [State] presented testimony . . . about the repeated phone calls to various cab companies, the blocked calls, and the statement of co-defendant[] Parrish." This, according to the judge, placed defendant on sufficient notice that the conspiracy involved the Gomez incident, and defense counsel then "intentionally used that charge as part of a sound trial strategy."

The judge referenced trial counsel's explanation that he employed this strategy hoping that a not guilty verdict would "snowball" into not guilty verdicts for the other counts. The judge found that defendant's ultimate conviction related to the Leonardo robbery and shooting did "not cause trial

A-1088-22

counsel's strategy to now be considered deficient." Defendant was much smaller in stature than the six-foot-tall man who attempted to rob Gomez. Judge Walsh therefore determined counsel's strategy was sound as "trial counsel was confident of a not-guilty verdict and felt its inclusion would only serve as a possible catalyst for a string of not guilty verdicts."

The judge similarly rejected defendant's claims regarding counsel's failure to object to the Gomez-related testimony under N.J.R.E. 404(b), finding that evidence directly related to the substantive conspiracy charge. Further, the judge found defendant failed to show how excluding this evidence would have led to a different more favorable result.

II.

Defendant appealed, raising the following sole argument:

> POINT I
>
> THE PCR COURT ERRED IN DENYING [DEFENDANT]'S PETITION FOR [PCR] BECAUSE [DEFENDANT] ESTABLISHED THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE INADMISSIBLE TESTIMONY CONCERNING AN EARLIER BOTCHED ROBBERY AND FAILING TO OBJECT TO THE CONSTRUCTIVE AMENDMENT OF COUNT FOUR OF THE INDICTMENT.

An appellate court's review of the denial of a PCR petition following an evidentiary hearing "is necessarily deferential to a PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013). This court "uphold[s] the PCR court's findings that are supported by sufficient credible evidence in the record." Ibid. Conversely, this court reviews the legal conclusions of the PCR court de novo. Id. at 540-41.

"A petitioner must establish the right to [PCR] by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). Accordingly, defendants must allege specific facts, "which, if believed, would provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992). New Jersey's PCR petition serves as an "analogue to the federal writ of habeas corpus." Preciose, 129 N.J. at 459. "[N]either a substitute for direct appeal" for those criminally convicted nor a vehicle to re-litigate matters already resolved on their merits, PCR proceedings can offer the best opportunity for ineffective assistance claims to be reviewed. Id. at 459.

To establish an ineffective assistance of counsel claim, a defendant must demonstrate: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668,

687 (1984); see also State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-pronged analysis in New Jersey). "That is, the defendant must establish, first, that 'counsel's representation fell below an objective standard of reasonableness' and, second, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Alvarez, 473 N.J. Super. 448, 455 (App. Div. 2022) (quoting Strickland, 466 U.S. at 688).

Importantly, this court's review of counsel's performance under the first Strickland requirement "must be highly deferential," Strickland, 466 U.S. at 689, and we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," requiring defendants to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Merely because a trial strategy fails does not mean that counsel was ineffective." State v. Bey, 161 N.J. 233, 251 (1999).

Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if [it] had no effect on the judgment." Strickland, 466 U.S. at 691. Under Strickland's second requirement, a defendant must also show "counsel's errors were so

serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. Errors with "some conceivable effect on the outcome" fall short of warranting relief. Id. at 693.

After reviewing the record, we conclude the PCR judge's findings are fully supported by the record and, in light of those facts, the legal conclusions are sound. We therefore affirm substantially for the reasons expressed in Judge Walsh's well-reasoned opinion. We add the following comments.

We recognize the vital role of the grand jury enshrined in our State Constitution to ensure "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." N.J. Const. art. I, ¶ 8. Further, "the accused shall have the right . . . to be informed of the nature and cause of the accusation." N.J. Const. art. I, ¶ 10. An indictment must: (1) sufficiently inform the defendant of the charge(s) to allow for the adequate preparation of a defense; (2) charge with specificity sufficient to avoid double jeopardy; and (3) "be sufficiently specific 'to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge.'" State v. LeFurge, 101 N.J. 404, 415 (1986) (quoting State v. Boratto, 80 N.J. 506, 519 (1979)).

We similarly recognize that indictments may not be amended post-indictment to alter the heart of the allegation made by the grand jury. Indeed, Rule 3:7-4 permits the trial court to

> amend [an] indictment . . . to correct an error in form or the description of the crime intended to be charged or to charge a lesser included offense provided that the amendment does not charge another or different offense from that alleged and the defendant will not be prejudiced thereby in his or her defense.

"An error relating to the substance or essence of an offense cannot be amended by operation of that rule." State v. Dorn, 233 N.J. 81, 94 (2018) (internal quotation marks omitted). The court may not amend an indictment "where . . . an amendment goes to the core of the offense or where it would prejudice a defendant in presenting his or her defense." Ibid. Ultimately, "the analysis as to whether an indictment was sufficient and whether an amendment under Rule 3:7-4 was appropriate hinges upon whether the defendant was provided with adequate notice of the charges and whether an amendment would prejudice defendant in the formulation of a defense." Id. at 96.

Mindful of these constitutional principles, we are satisfied that the judge carefully evaluated the conspiracy charge in connection with the grand jury presentation and found the grand jury contemplated and defendant was sufficiently on notice that the conspiracy charge encompassed the Gomez

12

attempted robbery. The judge further considered the entirety of the trial record to support her conclusion that defendant was on notice and prepared a defense designed to both refute his participation in the Gomez incident and utilize that non-involvement to distance himself from Parrish and ultimately the Leonardo homicide. We discern no abuse of discretion in that determination.

The judge then further determined that the trial strategy—successful in securing defendant's acquittal of the Gomez conspiracy and all other charges but non-slayer participation in the Leonardo felony murder and robbery—was a reasonable tactic to counter the specific evidence and circumstances of the case. The judge methodically analyzed the trial and PCR hearing records and concluded defendant failed to establish a claim of ineffective assistance under either prong of Strickland. The judge's findings were firmly grounded in the record.

We similarly concur with Judge Walsh's determination that any claims regarding the Gomez attempted robbery violating N.J.R.E. 404(b) lack merit as that evidence related directly to the substantive conspiracy charge. To the extent we have not otherwise addressed defendant's arguments, they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13     A-1088-22